WAFER
*v.*
WAFER.

―――――――――――――――――――――

## JAMES W. QUARLES *v.* D. L. EVANS.

Previous to the act of March 10th, 1852, our laws expressly prohibited every person from practising the profession of a physician or apothecary, or that of midwifery, without a special license granted by the medical board, or a diploma from the University of Lou_isiana, and imposed a fine upon all persons so offending, for the benefit of the Charity Hospital.

The act of March 10th, 1852, authorized any person with a diploma from a chartered medical college in the United States, to practice medicine without license, and to charge, demand, and receive fees for visits, &c., and repealed the prohibiting and penal laws not consistent therewith.

The repeal of a penal statute prevents a penalty or fine from being enforced, but does not render a contract made in defiance of law valid, nor does it give any right of recovery on such a contract.

The unrepealed proviso of sec. 4th of the act of the 16th March, 1816, only relieves the person coming within it, from the fine or penalty declared in the act.

APPEAL from the District Court of the Parish of Claiborne, *Bullard*, J. *Roysdon* and *Spofford*, for plaintiff.

The plaintiff, a physician, sued the defendant, as universal legatee of *Mrs. Prothro*, deceased, for medical attentions and services rendered her at the instance of defendant. Defendant pleaded, that plaintiff was not duly licensed by a medical board of the State, according to the statutes, and therefore could not recover for services rendered as a physician, in contravention of law .

Plaintiff, in an amended petition, also claimed compensation for medicines furnished, and attentions bestowed in nursing the deceased during her last illness, which was protracted and incurable. To the amended petition, defendant pleaded the prescription of one year. Plaintiff had a verdict and judgment, and the defendant appealed, his motion for a new trial having been overruled.

The plaintiff and appellee respectfully submits the following points and authorities : 1. Pending the suit, and before trial, the act of March 10th, 1852, was passed, authorizing any person with a diploma from a chartered medical college in the United States, to practise medicine without further license, and to charge, demand, and receive the usual fees for visits, medicines, prescriptions and medical services, and repealing the old prohibitory and penal laws, which were not consistent therewith. The disability to charge and collect fees was, in substance and effect, but a part of the penalty of the old laws. The repeal of a penal statute, pending a litigation in which its penalties are invoked, takes from the courts the power of enforcing those penalties. *The State* v. *Johnson*, 12 L. R. 547. " The reason is, that a legislative pardon is presumed to have been intended." Formerly, the practice of medicine without the license of a medical board, was *matum prohibitum* merely ; a party receiving the benefit of services

rendered in contravention of the laws then in force, was still under a natural obligation to pay for them. C. C. art. 1751, No. 1. The repeal of the prohibitory laws wipes every trace of a misdemeanor from this transaction, and transmutes the natural into a civil obligation. No reason can be given for a different doctrine, unless it be the necessity of punishing an offender, and deterring others from violating any prohibitory law, by enforcing a penal statute even after its repeal, so far as to release a party from a contract made in violation of it before the repeal. This argument would be still more forcible in a criminal case, and would sustain an indictment under a penal statute after its repeal, for an offence against it committed before. But no court of law would listen to such a doctrine. The judge *a quo* charged the jury, that his impression was, that this view of the law was correct; to which charge the defendant took his bill of exceptions. The charge was not sufficiently positive to mislead the jury, even if the judge's impressions were erroneous; and if they were, there are other grounds on which the verdict must be supported.

2. The plaintiff committed no violation, even of the repealed laws. The act of March 16th, 1816, (Bul. and Cur. p. 671,) in its title and through all its sections, uses the terms, "practise physic, or the profession of an apothecary." The act of 27th March, 1840, in sections 2 and 5 (Acts 1840, p. 99,) changes these terms in a very significant manner. This act imposes a penalty, not, like the former, upon persons who shall "practice physic, or the profession of an apothecary," but upon those who shall "practice the profession of a physician, an apothecary, or that of midwifery." Why this change of phraseology? It was manifestly the design of the Legislature in the latter enactment, to punish him only, who, without a license, followed the profession of a physician as a continuous pursuit, and held himself out to the world as such, not to visit with its penalties him who turned aside from another calling to prescribe for a single family, who, as in this instance, would have his services. It is in evidence that the plaintiff, at the time he rendered these services, did not follow the calling of a physician, but that of a planter, and that he only yielded to the urgent request of the present defendant, to attend his deceased connection in her illness, after having consulted him as an attorney at law, about the propriety of doing so without a license. Furthermore, it is submitted, that the plaintiff comes within the unrepealed proviso of sec. 4th of the act, 16th March, 1816, which exempts from penalties "a planter in the country, who, on the application of any of his sick neighbors, should procure them some alleviation, or administer them any kind of physic." The acts of 1816 and 1840, being penal statutes, must be strictly construed. 1 Blackstone, 88. If the evidence is insufficient to convict the plaintiff under an indictment, he cannot be deemed to have violated the law, so as to defeat his action.

3. He is clearly entitled to recover, under his amended petition, for medicines furnished, and services rendered in nursing the deceased testator, and alleviating her sufferings whilst laboring under the palsy, which terminated her life. The testimony of *Dr. McFarland*, as to the value of such services, would justify the verdict. This claim is not barred by the prescription of one year. *Gallaspy v. Livingston*, 5 Ann. 671.

4. Finally, if, upon a view of the whole case, there be any doubt upon the mind of the court, the plaintiff, in this instance, is entitled to the benefit of it. When the facts of a case present a double aspect, one of which displays a contract authorized by law, and the other one which the law reprobates, the contract must be sustained. *Succession of Bushrod Jenkins*, 5 Ann. 682. *Bank of Louisiana v. Briscoe*, 3 Ann. 157.

*Jones*, for defendant.

By the court:

DUNBAR, J. The plaintiff, a physician, sued the defendant as universal legatee of *Mrs. Prothro*, deceased, for medical attentions and services rendered her during her last illness, and by an amended petition, claimed compensation for medicines furnished, and attentions bestowed in nursing the deceased during her last illness, which he says was protracted and incurable.

Defendant pleaded, that plaintiff was not duly licensed by a medical board of the State, in conformity to law, and could not recover for services rendered as a physician, in contravention of law.

There was a verdict and judgment for the plaintiff, and the defendant has appealed.

Our laws expressly prohibited every person from practising the profession of a physician, an apothecary, or that of midwifery, without a special license granted by the medical board, or a diploma from the University of Louisiana, and imposed a fine upon all persons so offending, for the benefit of the Charity Hospital. It is true, that subsequent to the services rendered by the plaintiff as a physician, and during the pendency of this suit, the Act of March 10th, 1852, has been passed, authorizing any person with a diploma from a Chartered Medical College in the United States, to practice medicine without license, and to charge, demand and receive the usual fees for visits, &c., and repealing the penal laws not consistent therewith. From whence, it is argued by plaintiff's counsel, that the repeal of penal statutes pending a litigation in which its penalties are invoked, taking from the courts the power of enforcing those penalties, confers on the plaintiff the right to recover for services that were illegally rendered before the repeal of the statutes. This we think by no means follows. The repeal of a penal statute prevents a penalty or fine from being enforced, but does not render a contract, made in defiance of law, valid, nor does it give any right of recovery on such a contract.

It is next argued, that the plaintiff comes within the unrepealed proviso of sec. 4th of the act of the 16th March, 1816, which exempts from penalties "a planter in the country, who, on the application of any of his sick neighbors, should procure them some alleviation, or administer them any kind of physic." The same answer may be given to this, as to the former proposition. It only relieves him from the fine or penalty.

The plaintiff's counsel further contends, that the plaintiff is entitled to recover under his amended petition, for medicines furnished and services rendered in nursing the deceased.

We consider this a mere shift or device on the part of the plaintiff, with the hope that he might recover as a nurse, for services rendered illegally as a physician.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be reversed, and that there be judgment for the defendant, the plaintiff paying costs in both courts.