$$\begin{vmatrix} 57 & 115 \\ 138 & 214 \end{vmatrix}$$

# Pacific Guano Company *v.* Dawkins.

## *Inspection of Guano.*

1. *Act to protect planters from imposition in fertilizers; what requires of inspector.*—The " act to protect planters from imposition in the sale of fertil-izers," approved March 8, 1871, requires a personal inspection and branding of the packages of guano, under the immediate supervision of the inspector, or sub-inspector; an analysis by the inspector of a few samples taken from a lot of guano, and a branding of the sacks with the inspector's stamp, by the guano dealer, by direction of the inspector, who is absent when this is done, is not a compliance with the statute.

2. *Same; effect of repealing act.*—The subsequent repeal of the statute will not vitalize a contract made in violation of provisions, during the time it was in force. (*Reaffirming and adhering to the decision in Woods & Co. v. Armstrong*, 54 Ala. 150.),

APPEAL from Circuit Court of Henry.

Tried before Hon. J. E. COBB.

On the 23d day of February, 1874, the Pacific Guano

[Pacific Guano Company v. Dawkins.]

Company brought this action against the appellee, Dawkins, to recover a debt due for certain sacks of guano, which that company sold him.   The case was tried at the spring term,. 1876, and resulted in verdict and judgment for the defendant. The case turned, in ' the court below, entirely upon the validity of the inspection, analysis, and branding of the guano.

The evidence showed that the purchase was made from Weedon & Dent, agents of the plaintiff at Eufaula, who had the guano in store there.   Before the sale and delivery to defendant, one of the firm applied by letter to the State Inspector of Fertilizers, to have the guano inspected, and in answer received a letter from one VanDerveer, directing witness to forward specimens of his guano to Montgomery, for inspection and analysis.   Witness took a small portion of guano from a number of sacks, selecting it from different portions of the many sacks on hand, as directed by said VanDerveer, and forwarded the specimens so selected to Montgomery, as directed.   Afterwards he received from VanDerveer an analysis and certificate, and a stamp or brand, which stamp or brand he was directed by VanDerveer, in a letter, to place upon the lot of guano from which the specimens came.   This brand was the one ˙adopted by the State Inspector of Fertilizers, and witness directed a servant to place it upon all the sacks of guano, then in store,. of the lot from which said specimens were taken.   Witness looked through the sacks of guano, and thinks every one was stamped as directed, but it is possible some few may have been overlooked.   All this was before the sale to defendant, and out of this lot the sale was made to defendant, and this was the only analysis, inspection and stamping of ˙ the guano.   This was all the evidence.

The court charged the jury, in substance, to find for the defendant, if they found that the consideration of the debt was the price of guano sold and inspected in the manner above stated, and that the repeal of the law requiring the inspection and branding, would not give validity to contracts entered into while the inspection law was in force.   An exception was reserved to this charge, and it is now assigned as error.

S. H. DENT, for appellant.—The law does not state how the inspection it requires shall be made, and the stamping and branding are mere evidence of the inspection.   The evidence shows a *bona fide* inspection and analysis by a

[Pacific Guano Company v. Dawkins.]

proper officer, and that the sacks were branded. All was done in good faith; and the policy of the law, which was to "protect" planters, does not require that a *bona fide* inspection shall be held void, because there was an irregular branding.

2. The text books assert that, "where a statute is repealed, it is as to all acts not begun, continued, *and concluded* during its existence, the same as if it had never existed." The right of a purchaser to invoke the violation or disregard of the inspection law, is not given the defendant for his own benefit; but because it furthers public interest and sustains public policy. The legislature determines what public policy is. To forbid a thing may be public policy to-day; to-morrow, a change of interest or necessities, may make it public policy to allow that thing to be done. The inspection law was either unwise, or no longer needed. The legislature repeals it, and when this trial was had, a sale of unstamped guano was not against public policy. The sale of unstamped guano was never *malum in se* or immoral. It required affirmative legislation to prevent such a consideration from being held a valuable consideration. The law which required that has ceased to have any force, and public policy does not demand that a dead law, not in force at the time of the trial, shall now require the courts to hold such contract void. The only legal impediment to the enforcement of the contract is out of the way. It is submitted, with great deference, that the decision to the contrary, at last term, is incorrect. 15 New York, 290; 2 Peters, 380; 46 Ala. 403; *Brooklyn Life Insurance Co.'v. Bledsoe,* 52 Ala. 212; 4 Ala. 487.

D. M. SEALS, *contra.*—The provisions of the inspection act are framed with great care, and show the anxiety of the legislature to "protect" the planter against inferior fertilizers. The law amounts to nothing, if the inspection is entrusted to proprietors or dealers in guano. The act of the sub-inspector in this case, really amounts to leaving the inspection to the dealer in guano. In this instance the transaction was *bona fide.* But if the practice is sanctioned, who is to tell what guano was inspected in fact? What is to prevent the dealer from branding all his guano, whether he sent on specimens or not? The letter and spirit of the law certainly require personal inspection and branding. The decision in *Woods v. Armstrong,* at last term, is certainly correct. It follows adjudicated cases, and is based on principle. The law in force when the contract was made, must

[King v. Perry Insurance and Trust Company.]

determine its validity. If void then, it remains void, though the law be afterwards repealed.—28 Ala. 574; Cooley Con. Lim. 28; Parsons on Contracts, 380.

STONE, J.—We think the act "to protect the planters of this State from imposition in the sale of fertilizers"—Pamph. Acts 1870-1, page 68—reposed in the inspector and sub-inspectors a duty and trust, which required them personally to inspect, and to have the stamp or brand affixed to the packages under their immediate supervision. Less than this could furnish no protection to the planter, and might lead to the grossest abuse. Under this rule, the alleged inspections brought to view in this case, amounted to nothing; and we must deal with the questions as if no inspection had been attempted.

In the case of *Woods & Co. v. Armstrong*, 54 Ala. 150, we considered the effect of the repeal of the statute above referred to, on contracts made during its existence, and violative of its provisions. We held that the repeal did not validate contracts which that statute rendered invalid. In this we but followed a rule which had been previously declared in this State.—See *Mays v. Williams*, 27 Ala. 270; followed in *Stanley v. Nelson*, 28 Ala. 518; see, also, Sedg. Stat. & Cons. Law, 2d ed. 112, referring to *Jaques v. Witby*, 1 H. Bl. 65, and *Roby v. West*, 4 N. H. 285.

The rule declared above seems to us to result so naturally from principle, that we decline to depart from it.

There is no error in the record, and the judgment of the Circuit Court is affirmed.