[S. F. No. 5313.  In Bank.—March 30, 1912.]

GEORGE M. WILLCOX, as Administrator with the Will
Annexed of the Estate of F. W. Sisson, Deceased, Appel-
lant, v. W. EDWARDS, doing business under the name
and style of Edwards & Company, Respondent.

[S. F. No. 5314.  In Bank.—March 30, 1912.]

GEORGE M. WILLCOX, as Administrator with the Will
Annexed of the Estate of F. W. Sisson, Deceased, Appel-
lant, v. CHARLES E. PAXTON, Respondent.

[S. F. No. 5315.  In Bank.—March 30, 1912.]

GEORGE M. WILLCOX, as Administrator with the Will
Annexed of the Estate of F. W. Sisson, Deceased, Appel-
lant, v. FRANK R. LEWIS, Respondent.

CONTRACTS FOR PURCHASE OF STOCKS ON MARGIN—AMENDMENT OF 1908
TO SECTION 26, ARTICLE IV, OF THE CONSTITUTION—PRIOR INVALID

CONTRACTS NOT VALIDATED.—The amendment of November 3, 1908, to section 26 of article IV of the state constitution, providing that "all contracts for the purchase or sale of shares of the capital stock of any corporation or association without any intention on the part of one party to deliver and of the other party to receive the shares, and contemplating merely the payment of differences between the contract and market prices on divers days, shall be void, and neither party to any such contract shall be entitled to recover any damages for failure to perform the same, or any money paid thereon," did not validate previous contracts made in contravention of the repealed provision of that section, which invalidated all contracts for the sale of stocks "on margin, or to be delivered at a future day," and gave a right of action to recover any money paid on such contracts to the party paying it.

ID.—EFFECT OF REPEAL OF STATUTE INVALIDATING CONTRACT.—The general rule is, with the exception of statutes relating to usury, that if a contract is void by the law in force at the time it is made, the subsequent repeal of the law will not validate the contract.

ID.—AMENDMENT OF 1908 REPEALED PRIOR PROVISION OF CONSTITUTION— OPERATION OF AMENDMENT NOT RETROSPECTIVE.—The effect of the adoption of the amendment of November 3, 1908, to section 26 of article IV of the state constitution is to repeal or extinguish all provisions of the former section that are not re-enacted in the amended section. The amendment is not retrospective in operation, for it contains nothing to that effect.

ID.—INTENTION TO OPERATE RETROSPECTIVELY MUST APPEAR.—The general rule, applicable alike to constitutions and statutes, is that they are not to be considered retrospective in their operation, unless the intention to make them so clearly appears from their terms.

ID.—MONEY PAID FOR PURCHASE OF STOCKS ON MARGIN—RIGHT OF ACTION TAKEN AWAY BY AMENDMENT.—The right of action, given by the repealed provision of that section, to recover money paid on such invalid contracts for the sale of stocks on margin or to be delivered at a future day, did not survive the repeal of that portion of the section.

ID.—RIGHT TO SUE NOT FOUNDED ON QUASI CONTRACT—PENDING ACTIONS DID NOT SURVIVE AMENDMENT.—The right to sue for the recovery of money paid under such a void contract for the purchase of stock, given by the repealed provision of the constitution, was not a vested right depending upon a *quasi* contract for the repayment of the money by the broker, arising by operation of law from the terms of the constitutional provision as it existed when the void contract was made. It arose solely from the provision of the constitution imposing it, and upon the repeal of that provision, without a saving clause, the privilege of bringing suit for the money paid on the marginal contract was withdrawn, and all pending litigation not prosecuted to final judgment fell for want of authority to maintain it.

ID.—PROPERTY PLEDGED TO SECURE ADVANCES FOR PURCHASE OF STOCK
ON MARGIN.—DEMAND FOR RETURN PRIOR TO AMENDMENT OF CON-
STITUTION—RECOVERY MAY BE HAD AFTER AMENDMENT WITHOUT
PAYING ADVANCES.—Shares of stock owned by a broker's customer,
and pledged by him to secure the payment of advances made by
the broker under contracts for the purchase of other stocks on
margin, which contracts when made were void under the repealed
constitutional provision, are recoverable by the pledgor, after the
repeal of that provision, without payment of the amount advanced by
the broker under such contracts, where demand for their return was
made prior to the repeal of the provision of the constitution.

APPEALS from judgments of the Superior Court of the
City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Charles S. Wheeler, J. F. Bowie, and Nathan Moran, for
Appellant.

Aitken & Aitken, for Respondent.

THE COURT.—After the decision of these cases in Depart-
ment a rehearing was granted for the purpose of considering
further the effect of the omission from the constitutional en-
actment of November 3, 1908 (art. IV, sec. 26), of the pro-
vision whereby money paid on certain prohibited contracts
might be recovered. As there is no difference of opinion
regarding some of the matters discussed in the opinion of the
Department, written by Mr. Justice Shaw, a portion thereof
is hereby adopted as follows:—

"In each of the above entitled causes a general demurrer to
the amended complaint was sustained, the plaintiff refused to
amend and judgment was thereupon given for the defendant.
The plaintiff in each case has appealed from such judgment.
The questions of law presented are the same in each case, and
the facts are so far identical that it will be necessary to give
those only which are stated in the complaint against Edwards.

"Edwards was a broker in San Francisco. Sisson and
Edwards agreed that Sisson should furnish Edwards with
sums of money wherewith to buy corporate stocks, not enough,
however, to pay the full price thereof, and that Edwards
should buy such stocks for Sisson. Edwards agreed to ad-

vance whatever additional money was required for that purpose and to hold the stocks so bought as security for the moneys so advanced by him, with interest thereon, and for his commissions for making the purchases, all of which Sisson agreed to pay. If the stocks bought depreciated so that they were not worth the amount of such advances, interests and commissions, Edwards·was empowered to sell them to reimburse himself. Under this arrangement, Edwards had bought stocks from time to time for Sisson, had received divers sums of money from Sisson for that purpose, and had advanced sums of money for him in payment thereon, the particular amounts whereof were unknown to the plaintiff administrator, but were well known to the defendant. In November, 1907, and January, 1908, the stocks bought by Edwards had depreciated and he threatened to sell the same to repay the advances, interest and commissions owing to him, whereupon, to prevent the making of such sales, Sisson delivered to Edwards, in pledge as additional security for the moneys so owing to Edwards, two stock certificates, representing 200 shares of the Arizona Lumber and Timber Company. These shares were owned by Sisson and were not a part of the stocks purchased by Edwards in pursuance of the aforesaid agreement. A few days after the pledge of this stock was made Sisson died. The plaintiff is the duly appointed administrator of his estate. Edwards threatened to sell the two certificates last mentioned to obtain repayment of the moneys so due him from Sisson, whereupon this action was begun. The complaint prays for judgment directing the delivery to plaintiff of the two last mentioned certificates of stock and enjoining the threatened sale thereof, and that Edwards be compelled to account for the moneys furnished by Sisson to him and that judgment be given in favor of plaintiff for the balance found due upon such accounting.

"The action was begun on June 12, 1908. It was predicated on the provisions of section 26, article IV, of the constitution, as it then existed, authorizing a recovery of money paid on a contract for the sale of corporate stock on margin. A demurrer to the complaint was filed and before it was disposed of, the people, on November 3, 1908, adopted an amendment of section 26, article IV, aforesaid. Thereupon an amended complaint and a general demurrer thereto were filed, and this

demurrer, as above stated, was sustained by the court below. On behalf of the respective defendants it is claimed that the amendment of the constitution takes away all prior rights of action to recover moneys paid on contracts for margin sales of stock and all rights growing out of such contracts.

"Prior to the amendment of November 3, 1908, section 26 was as follows:

" 'The legislature shall have no power to authorize lotteries or gift enterprises for any purpose, and shall pass laws to prohibit the sale in this state of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery. The legislature shall pass laws to regulate or prohibit the buying or selling of the shares of the capital stock of corporations in any stock board, stock exchange, or stock market under the control of any association. All contracts for the sale of shares of the capital stock of any corporation or association, on margin or to be delivered at a future day, shall be void, and any money paid on such contracts may be recovered by the party paying it by suit in any court of competent jurisdiction.'

"The section as amended on November 3, 1908, is as follows:

" 'The legislature shall have no power to authorize lotteries or gift enterprises for any purpose and shall pass laws to prohibit the sale in this state of lottery or gift enterprise tickets or tickets in any scheme in the nature of a lottery. The legislature shall pass laws to prohibit the fictitious buying and selling of the shares of the capital stock of corporations in any stock board, stock exchange, or stock market under the control of any corporation or association. All contracts for the purchase or sale of shares of the capital stock of any corporation or association without any intention on the part of one party to deliver and of the other party to receive the shares, and contemplating merely the payment of differences between the contract and market prices on divers days, shall be void, and neither party to any such contract shall be entitled to recover any damages for failure to perform the same, or any money paid thereon, in any court of this state.'

"The concluding sentences of the respective sections show the changes made by the amendment which are involved in this action. The original section gives the broader description of the thing prohibited. It forbids all contracts for the

sale of stock 'on margin, or to be delivered at a future day.' The new section forbids such sales only when they are made 'without any intention on the part of one party to deliver and of the other party to receive the shares, and contemplating merely the payment of differences between the contract and market price on divers days.' The contract between Sisson and Edwards, as it is alleged, was clearly a contract for the purchase and sale of stocks on margin (see *Parker* v. *Otis*, 130 Cal. 330, [92 Am. St. Rep. 56, 62 Pac. 571]), and as such was forbidden by the constitutional provision in force at the time it was made. But the allegations of the complaint do not show a contract which comes within the description of the thing forbidden by the amended section. The complaint does not aver that the sales were made without any intention to deliver or receive the stock, or that the parties contemplated merely the payment of differences between the buying price and the market price on a future day. Both the old and the new section declare that the forbidden contracts 'shall be void.' The contract as alleged was void under the old section, the one then in force, but it would not have been void under the new section, if it had been made after its adoption.

"The effect of the adoption of the amendment of 1908 was to repeal or extinguish all provisions of the former section that are not re-enacted in the amended section. If it has a retroactive effect it would validate the contract for the purchase of stocks as it is alleged in the complaint, and render it binding upon both parties. This would necessarily defeat the action to recover from Edwards the money paid thereon by Sisson, for it does not appear that Edwards is in any respect in default thereon; hence he could not be called upon to return the money paid to him thereunder and used by him in pursuance thereof, if the validity of the contract is established. The first question for determination is, therefore, whether or not the repeal or extinguishment of the former section had the effect of validating the contract which by it was expressly declared to be void.

"The general rule, applicable alike to constitutions and statutes, is that they are not to be considered retrospective in their operation, unless the intention to make them so clearly appears from their terms. (*Gurnee* v. *Superior Court*, 58 Cal. 90; *Watt* v. *Wright*, 66 Cal. 204, [5 Pac. 91]; *Oakland*

v. *Whipple,* 44 Cal. 303; Cooley on Constitutional Limitations, 97.)   The amendment is therefore not retrospective in operation, for it contains nothing to that effect.

"The established rule is that if a contract is void by the law in force at the time it is made, the subsequent repeal of the law will not validate such contract.   The following cases declare this rule: *Hannay* v. *Eve,* 7 U. S. (2 Cranch,) 242, [2 L. Ed. 427]; *Milne* v. *Huber,* 3 McLean, 216, [Fed. Cas. No. 9617]; *Mays* v. *Williams,* 27 Ala. 267; *Woods* v. *Armstrong,* 54 Ala. 150, [25 Am. Rep. 671]; *Pacific G. Co.* v. *Dawkins,* 57 Ala. 115; *Mitchell* v. *Doggett,* 1 Fla. 371; *Denning* v. *Yount,* 62 Kan. 220, [50 L. R. A. 103, 61 Pac. 803]; *Quarles* v. *Evans,* 7 La. Ann. 543; *Springfield Bank* v. *Merrick,* 14 Mass. 324; *Hathaway* v. *Moran,* 44 Me. 67; *Robinson* v. *Barrows,* 48 Me. 186; *Banchor* v. *Mansell,* 47 Me. 58; *Webber* v. *Howe,* 36 Mich. 155, [24 Am. Rep. 590]; *Ludlow* v. *Hardy,* 38 Mich. 690; *Handy* v. *St. Paul etc. Co.,* 41 Minn. 188, [16 Am. St. Rep. 695, 4 L. R. A. 466, 42 N. W. 872]; *Andling* v. *Levy,* 57 Miss. 58; *Decell* v. *Loewenthal,* 57 Miss. 331, [34 Am. Rep. 449]; *Bailey* v. *Mogg,* 4 Denio. 62; *New York etc. Co.* v. *Van Horn,* 57 N. Y. 477; *Roby* v. *West,* 4 N. H. 285, [17 Am. Dec. 423]; *Puckett* v. *Alexander,* 102 N. C. 95, [3 L. R. A. 43, 8 S. E. 767]; *Hughes* v. *Boone,* 102 N. C. 164, [9 S. E. 286]; *Nichols* v. *Poulson,* 6 Ohio 309; *Denny* v. *McCown,* 34 Or. 47, [54 Pac. 952]; *Gilliland* v. *Phillips,* 1 S. C. 155; *Hunt* v. *Robinson,* 1 Tex. 748; *Sayer* v. *Brown,* 7 Ind. Terr. 675, [104 S. W. 878].

"The text writers declare the same doctrine.   (9 Cyc. 576; 15 Am. & Eng. Ency. of Law, 242; 1 Page on Contracts, sec. 333, p. 517; Bishop on Contracts, sec. 479; 2, Sutherland on Statutes, 2d ed., p. 1219.)

"Statutes changing the law relating to usury seem to constitute an exception to this rule.   In *Curtis* v. *Leavitt,* 15 N. Y. 85, 152, 173, 229, 254; *Woodruff* v. *Scruggs,* 27 Ark. 26, [11 Am. Rep. 777]; *Iowa Assoc.* v. *Heidt,* 107 Iowa 297, [70 Am. St. Rep. 197, 43 L. R. A. 689, 77 N. W. 1050]; *Savings Bank* v. *Allen,* 28 Conn. 97; *Welch* v. *Wadsworth,* 30 Conn. 149, [79 Am. Dec. 239], and *Andrews* v. *Russell,* 7 Blackf. (Ind.) 474, there were retrospective statutes expressly forbidding the party to set up the defense of usury in actions upon pre-existing contracts, or, in effect, taking away the

right to make such defense. In *Ewell* v. *Daggs*, 108 U. S. 148, [27 L. Ed. 682, 2 Sup. Ct. Rep. 408] ; *Wood* v. *Kennedy*, 19 Ind. 68, and *Parmelee* v. *Lawrence*, 48 Ill. 339, the amended statutes merely omitted and consequently repealed by implication the penal provisions of the previous usury law. The defense of usury must be made affirmatively in some recognized mode, or it is waived. (22 Ency. of Plead. & Prac. pp. 421, 422.) The usurious contract, although said by the statute to be 'void,' is held to be only voidable at the election of the payer, and money paid thereon cannot be recovered. (*Matthews* v. *Ormerd*, 140 Cal. 582, [74 Pac. 136].) The general rule that the repeal of a law does not validate contracts declared void thereby is recognized and admitted in all the above mentioned cases, and the usury law is said to be an exception. The decisions are based on the ground that the right to set up usury as a defense and avoid the contract to pay principal or interest, is in the nature of a statutory penalty upon the lender and comes within the rule that the repeal of a penal law instantly releases the penalty imposed, and that it is not a property right, but a mere privilege pertaining only to the remedy, which the legislature may take away. The situation of one who has agreed to pay usury is not similar to that of the decedent here. One who sets up the defense of usury to avoid his note is not seeking to recover money which he has paid, or of which he has been deprived. He is endeavoring to avoid the payment of money which he justly owes. He is given the right to do this solely for the sake of accomplishing the public purpose of preventing the making of usurious contracts, and not to reimburse him for any outlay he has made. The decedent, on the other hand, has paid money to the broker. He had, in contemplation of the law as it then stood, suffered a pecuniary loss. He was allowed to recover the loss, whereas the one who pleaded usury to avoid payment of his debt was allowed to inflict a positive injury upon the payee.

\*      \*      \*      \*      \*      \*      \*      \*      ·      \*      \*

"There are a few decisions not involving usury laws which declare that the particular contracts under consideration therein, although void by the law in force when made, were rendered valid by the subsequent repeal of the law. (*Washburn* v. *Franklin*, 35 Barb. (N. Y.) 599; *Central Bank* v. *Empire etc. Co.*, 26 Barb. (N. Y.) 23; *Hess* v. *Werts*, 4 Serg. &

R. (Pa.) 356; *Lewis* v. *McElvaine,* 16 Ohio 347.) The over-whelming weight of authority, as we have seen, is against these decisions.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

The amendment to the constitution is not made retroactive, the original section declares such contracts wholly void and not merely voidable, the vice inhered in the contract itself, and the new provision does not purport to declare such prior contracts, or any contracts valid or enforceable. We are satisfied that the amendment does not validate previous contracts for the sale of stocks on margin."

No doubt can be entertained on the foregoing proposition that the contract for the purchase of stocks on margin was void under the provision of the constitution existing at the time it was made and that it would not have been void if it had been made after the amendment in 1908 of section 26 of article IV of the constitution. The court, however, is convinced that the right to sue under the section as it existed when the contract was made did not survive the repeal of that part of the constitution. To uphold that doctrine we would be compelled to conclude that the right to sue for the recovery of money paid under a void contract for the purchase of stock was a vested right depending upon a *quasi* contract for the repayment of the money by the broker which arose by operation of law from the very terms of the constitutional provision as it existed when the void contract was made. Such a rule is not, we think, supported by the best reasoning nor by the weight of authority. We are here concerned with the *right of action* given by the section as it stood originally but omitted from it upon its later readoption. Unless a vested right had arisen in favor of plaintiff's decedent prior to the amendment of the constitution without a saving clause, the privilege of bringing suit for the money paid on the margin contract was withdrawn by the repeal of the law granting it, and all pending litigation not prosecuted to final judgment fell for want of authority to maintain it. We have concluded that the privilege of bringing an action like this was taken away by the later enactment, and that makes it unnecessary to discuss the effect of this subsequent constitutional provision upon the *status* of the contract for the purchase of stock on margins. We are aware that this court has held the con-

stitutional provision giving the right to sue under the former section 26 of article IV to be not penal but remedial in its nature (*Parker* v. *Otis,* 130 Cal. 322, [92 Am. St. Rep. 56, 62 Pac. 571]), and therefore that an action brought under it is not barred by the statute of limitations applicable to actions "upon a statute for a penalty or a forfeiture"; but it does not follow that being remedial the section in question confers a right that is vested before action and final judgment thereon. Nor does the expression contained in the case just cited mean that the drastic remedy formerly given to one who deals in stocks on margin contracts is not conferred for highly punitive purposes. In that case and in others to which we shall refer, the court merely held that the privilege of bringing suit was not technically a "penalty" in contemplation of the statutes of limitation. Indeed, *Parker* v. *Otis* is itself authority supporting respondents' contention that the right to sue is in the nature of a privilege extended to the investor on a margin contract not merely to protect him, but to discourage that kind of gambling. The opinion contains this language: "The constitution treats the transactions in question as harmful in their tendency, and because harmful has sought to eradicate the evil not only by declaring the contract void, but also by giving a right of action to recover the money paid under it. In *Baldwin* v. *Zadig,* 104 Cal. 594, [38 Pac. 363, 722], this court said: "Except for the provision of the constitution, there would be no right of recovery in the plaintiff, and we think that this right of recovery must be measured by the terms of the constitution in which it is given." In *Wilson* v. *Head,* 184 Mass. 516, [69 N. E. 317], the problems before the court were essentially the same as those presented here. That also was a suit to recover money paid under a contract for the purchase of stocks on margin which was void in law at the time it was made. By a subsequent amendment to the law, the right of recovery was limited in such manner as to make it applicable to the facts of that case. There, as here, the contention was made that the right to recovery of money paid under the void contract had vested by virtue of the law in force when the transaction took place, and could not be defeated by the subsequent enactment, but the supreme court of Massachusetts held that although the statute creating the privilege to sue was remedial and not

penal it gave no vested rights which the legislature could not take away. The opinion contains this language: "It is necessary to consider the effect of the amendments upon cases which arose prior to the enactment of the statute of 1901 and which are included in the original statute, but not included in the amended statute. Did the statute create rights which vested before the amendments were in force so that the legislature could not constitutionally take them away? These rights were purely statutory, to recover money paid under a kind of gambling contract under which there can be no recovery at common law. *Wall* v. *Metropolitan Stock Exchange,* 168 Mass. 282, 284, [46 N. E. 1062]. As was said in *Corey* v. *Griffin,* 181 Mass. 229, 232, [63 N. E. 420], the statute was 'intended to suppress a well known species of gambling. . . . The object is not to punish the winner nor to protect the loser as such, but simply to prevent this kind of gambling by subjecting the participants to a liability which, except for some great purpose of preventing injury to the public morals, would seem to be unfair and unjustifiable.' See *Crandell* v. *White,* 164 Mass. 54, [41 N. E. 101]. Such a statute does not give vested rights which the legislature may not take away. When the remedy provided by the statute is lost by an amendment taking it away in certain classes of cases, nothing further of benefit remains in those cases. *Bartlet* v. *King,* 12 Mass. 537, [7 Am. Dec. 99]; *Nichols* v. *Squire,* 5 Pick. 168; *New London Northern Railroad* v. *Boston and Albany Railroad,* 102 Mass. 386, 389; *Louisiana* v. *Mayor of New Orleans,* 109 U. S. 285, 287, [27 L. Ed. 936, 3 Sup. Ct. 211]; *People* v. *Livingston,* 6 Wend. (N. Y.) 526, 530; *Van Inwagen* v. *Chicago,* 61 Ill. 31; *Bailey* v. *Mason,* 4 Minn. 546, (430)." One of the cases cited in the opinion just quoted is *Louisiana ex rel. Folsom* v. *Mayor and Administrators of New Orleans,* 109 U. S. 285, [27 L. Ed. 936, 3 Sup. Ct. Rep. 211]. The relator, Folsom, owned certain judgments against the city of New Orleans, given as compensation for injury to property by a mob. After these judgments became final, the power of taxation by New Orleans was so changed that no money could be raised for their payment. The relator sought to compel a levy under the former law of a tax sufficient to meet his claims. It is urged that the judgments were contracts which might not be impaired by subsequent legislation. Mr. Justice Field, deliver-

ing the opinion of the court, said, among other things: "A judgment for damages, estimated in money, is sometimes called by text writers a specialty or contract of record, because it establishes a legal obligation to pay the amount recovered; and, by a fiction of law, a promise to pay is implied where such legal obligation exists. It is on this principle that an action *ex contractu* will lie on a judgment. Chitty on Contracts, Perkins's Ed. 87. But this fiction cannot convert a transaction wanting the consent of parties into one which necessarily implies it. Judgments for torts are usually the result of violent contests, and, as observed by the court below, are imposed upon the losing party by a higher authority against his will and protest. The prohibition of the federal constitution was intended to secure the observance of good faith in the stipulation of parties against any state action. Where a transaction is not based upon any assent of parties, it cannot be said that any state is pledged with respect to it; and no case arises for the operation of the prohibition. *Garrison* v. *City of New York,* 21 Wall. 203, [22 L. Ed. 612]. There is, therefore, nothing in the liabilities of the city by reason of which the relators recovered their judgments, that precluded the state from changing the taxing power of the city, even though the taxation be so limited as to postpone the payment of the judgments." If a judgment for tort does not vest a right arising *ex contractu* against a municipal corporation, *a fortiori* the privilege of an individual to sue, given him more to prevent gambling than to reimburse him for money paid by him on a valid contract is not a contractual prerogative which the legislature may not take away before it has ripened into a final judgment. In *Bartlet* v. *King,* 12 Mass. 537, [7 Am. Dec. 99], it was held that a statute of mortmain was repealed by a later law changing the whole attitude of the state to the subject-matter of the legislation. In *New London Northern R. R. Co.* v. *Boston and Albany R. R. Co.,* 102 Mass. 386, it was held that a statute vesting in railroad commissioners the powers and duties of commissioners appointed by the court in accordance with an earlier statute, took away the jurisdiction of the court and its commissioners over pending proceedings. The court used the following significant language in the course of the opinion: "A statute which wholly repeals an earlier one, either expressly or by

implication, without any saving clause, makes it ineffectual to support any proceedings, whether not yet begun, or pending at the time of its passage, and not already prosecuted to final judgment vesting absolute rights. The books are so full of cases illustrating this principle, that the only difficulty is in making a selection." In *Van Inwagen* v. *City of Chicago,* the supreme court of Illinois was considering an action to collect a tax for an insurance business transacted in the city of Chicago. It was held that the enabling act was repealed by a later statute and that the cause of action for the tax was not a vested one. Mr. Justice Breese, who delivered the opinion of the court, said, among other things: "We believe the rule is well settled that, as to inchoate rights—rights not carried into judgment, and so not executed, cannot be, and are not, saved, in the absence of a saving clause in the repealing statute. The doctrine is, that inchoate rights, derived under a statute, are lost by its repeal, unless saved by express words in the repealing statute, and unless those rights have become so far perfected as to stand independent of the statute. . . . The effect of a repealing statute is to obliterate the prior law as completely from the records as if it had never passed, and it must be considered as a law that never existed, except for the purpose of those actions or suits, which were commenced, prosecuted and concluded while it was an existing law. *Ray* v. *Goodwin,* 4 Moore & Payne 341; Dwarris on Statutes, 676."

The very language of section 26 of article IV of the constitution as it existed when plaintiff's decedent entered into the contracts in question indicates, we think, an intention not to vest a right to the return of his money in one who entered into a forbidden arrangement with a broker for the purchase of stocks on margin. He was given the power to sue for the money, but there is no declaration or implication that he was entitled to it before it was recovered by such suit. The very terms of the section gave to him an inchoate right and as we have seen such rights became vested only when reduced to final judgment. In *Bailey* v. *Mason,* 4 Minn. 546 (430), it was held that a mechanics' lien, depending not on contract, but upon a statute alone for its existence, was an inchoate right which was destroyed by the unconditional repeal of the statute which created it. We might discuss many other cases

to which our attention has been called, but will only mention a few typical ones. *Kimbro* v. *Colgate,* 5 Blatchf. 230, Fed. Cas. No. 7778, was a case involving the validity of a contract made in violation of a federal statute requiring agreements of a certain kind to be stamped. It was conceded that the contract when made was wholly void and that any party to it was authorized to bring suit to recover back the money paid under such purported agreement for his own benefit. The right to sue was declared to be not a penalty. Nevertheless the court said that: "As the money was paid under a contract made in violation of law, there is no ground for the recovery of it back, upon principles of the common law, and, as the statute which gave the remedy has been repealed the cause of action and the suit, must, upon established principles, fall with the repeal." The rule that if the remedy for a right created solely by statute is repealed while the right is still inchoate and not reduced to possession, the right is lost, in the absence of a saving clause in the repealing statute has been adopted in this state. In *People* v. *Bank of San Luis Obispo,* 159 Cal. 65, [112 Pac. 866], Mr. Justice Henshaw, delivering the opinion of the court, after a review of the leading state, federal, and English authorities, said: "In the case of penalties and crimes, the repeal operates to defeat all actions pending. In case of a statute conferring civil rights or powers, the repeal operates to deprive the citizen of all such rights or powers which are at the time of the repeal inchoate, incomplete and unperfected. In the case of statutes conferring jurisdiction, the repeal operates by causing all pending proceedings to cease and terminate at the time and in the condition which existed when the repeal became operative. In cases of judgment pending upon appeal, the rule of decision is that the proceedings abate and the judgment falls."

Our attention has been called to no authority holding that a *quasi* contract for the repayment of money arises out of a transaction like the one which we are considering. In *Palmer* v. *Conly,* 4 Denio, (N. Y.) 376, it was said that a penalty given to a landlord against one who knowingly assisted a defaulting lessee to remove his furniture from the leased premises vested in favor of the lessor, notwithstanding the repeal of the statute providing the remedy of distress for rent. That case, however, is not at all similar to the one at bar. The reason for

imposing the penalty was that the wrongdoer knowingly assisted another in violating his contract with an innocent party. *The College of Physicians* v. *Harrison,* 9 Barn. & Cr. 524, and *The Company of Cutlers in Yorkshire* v. *Ruslin,* Skinner 364, cited in *Palmer* v. *Conly,* 4 Denio, (N. Y.) 376, were both cases in which penalties were given in favor of innocent parties against the violator of the law as satisfaction to the former for actual loss. *Thompson* v. *Howe,* 46 Barb. (N. Y.) 287, to which our attention has been called, was dependent upon a statute giving to a party defrauded a right of action for a penalty against the one who had practiced the fraud upon him. We have been cited also to authorities holding that where a penalty is imposed by statute on a common carrier for omitting precautionary measures, and such omission constitutes negligence, the repeal of the law commanding the precautions, after a breach thereof, does not take away a right of action in favor of a party injured by reason of the common carrier's negligence (*Grey's Executor* v. *Mobile T. Co.,* 55 Ala. 407, [28 Am. Rep. 729] ; *Graham* v. *Chicago etc. Co.,* 53 Wis. 473, [10 N. W. 609] ; *Bay City etc. Co.* v. *Austin,* 21 Mich. 410), but such authorities are not apposite to the circumstances of this case, because the relation of common carrier and shipper or passenger is contractual and applicable existing statutes are, of course, made part of every contract between such parties.

We conclude, therefore, that the special remedy conferred by the old section 26 of article IV of the constitution was not one arising from contract and was not a vested right. It arose alone upon the provision of the statute imposing it. (*Baldwin* v. *Zadig,* 104 Cal. 594, [38 Pac. 363].) No *quasi* contract for repayment of the money arose by operation of law, because such contracts are not favored and are only declared when "principles of natural equity" or the law itself produces the obligation. (Pothier on Obligations, p. 113.) Therefore, the administrator had no cause of action for the money paid to the brokers under void contracts. The demurrers were properly sustained as to these causes of action.

The plaintiff also sued for the delivery of certain shares of stock which were owned by his decedent and were pledged to the brokers to secure the payment of certain sums claimed under the margin contracts. These shares were not pur-

chased on margin. It is contended that the right to sue for the return of the money paid and the cause of action for the pledged stock are not dependent one upon the other—that the original contract being void, stock pledged in support of it could be recovered as not being held by the pledgee to cover a valid obligation, and with this contention we agree. Respondents argue that in theory these actions were exactly like *Cashman* v. *Root,* 89 Cal. 377, [23 Am. St. Rep. 482, 12 L. R. A. 511, 26 Pac. 883], in which the property pledged as security for payments on contract for purchase of stock on margin are held recoverable under the very section we have been discussing; that as these suits depended upon the privilege of bringing an action for payments on a certain sort of contract, the withdrawal of that privilege left the plaintiff without power of recovery in these actions whatever his right to the return of the pledged stock may be if pursued in a proper suit. But the complaint in each case sets forth all of the circumstances of the transactions between Sisson and the defendant and prays judgment for the money and the pledged stock. The contracts were void when they were made, and as we have held, the repeal of the constitutional right to sue for the money paid under their terms did not operate to give validity to the agreements themselves. The stock, therefore, was pledged to secure advances to be made on void contracts. None of it had been actually applied to payments on such contracts before the return of the shares was demanded by plaintiff, and such demands antedated the constitutional amendment. The stock was, therefore, held without authority of law as supposed security for void contracts and according to the complaints in these cases clearly plaintiff was entitled to its return. The demurrers to the causes of action for recovery of the pledged stock were erroneously sustained.

The judgment is reversed with instructions to the superior court to permit amendments to the complaints in accordance with the views expressed in the foregoing opinion.

SHAW, J. concurring.—I concur in the judgment of reversal. I agree with the conclusion that the contracts for the purchase of stocks on margin, being void under the constitutional provision existing at the time said contracts were made, were not made valid by the subsequent amendment in effect

repealing the vitiating provision. And I agree that the stocks pledged to secure these void contracts belonged of right to the pledgor and the plaintiff is entitled to recover them. I express no opinion upon the proposition that the money paid upon the marginal contracts cannot now be recovered back by the plaintiff.

Angellotti, J., concurred with Justice Shaw.