## WHITAKER *v.* WARREN.

A count in debt, for injuries caused by a dog, and one in case, for the
same injuries, may be joined.

A person, standing *in loco parentis* to an infant, may recover for medi-
cines and medical attendance furnished to the infant in consequence

of injuries resulting in death, and for loss of service up to the time of the death, when it appears that there has, in fact, been a loss of service.

The statute, limiting the time for the recovery of penalties, does not apply to cases of unliquidated damages, even though the statute giving the rights of recovery is a penal statute.

DEBT, upon the statute, for double damages for injuries to the plaintiff's adopted minor child from the bite of the defendant's dog. A second count declares upon the same injuries to the plaintiff's servant. Subject to exception, the plaintiff amended his declaration by adding a count in case for the same injuries to the plaintiff's adopted minor child.

The child died from the effects of the biting about ten weeks after he was bitten. It was given to the plaintiff by its parents when it was but a few months old, and had lived in the plaintiff's family and been treated as his own child ever after. The plaintiff procured the child's name to be changed, but he had not by legal proceedings adopted it.

The plaintiff claimed to recover the expenses incident to the sickness and death of the child, and for loss of its services and society to the time of its death.

The defendant claimed that the action could not be maintained; that the facts stated are not sufficient evidence of the relation of parent and child, or master and servant; that, if they were, the right of action was barred, for the reason that the statute on which it was founded was a penal statute.

*Sulloway, Topliff & O'Connor*, with whom were *Foote* and *Dearborn*, for the plaintiff.

The only questions that are now material are,—Can the plaintiff recover? If so, for what? Has the plaintiff been injured in person, or in his personal or property rights? If so, the statute declares that he shall recover.

We say that he has; that the rights of this plaintiff against this defendant are in every respect exactly what they would be were this plaintiff the natural father of the deceased child.

He was an adopted son at common law, had all the rights and was subject to all the liabilities of a natural son, excepting the single fact that, as a relic of the feudal system, he could not inherit property entailed to heirs of the body.

As against this defendant, the plaintiff has all the rights that he would have, had this child issued from his own loins. Our statute, providing for the adoption of children through the probate court, gives the child one right only that he did not possess under the common law system, viz., that of inheriting property as an heir of the body. This statute does not take away any common-law rights,

but it points the way by which the child shall be forever protected in the one additional right of inheritance with heirs of the body.

The case finds that this plaintiff had done everything necessary to make this child his by adoption, and one thing more, viz., had its name changed by act of the legislature, and that the natural parent of the child forever renounced all claim to the child, and delivered it in its infancy to this plaintiff. The mother upon her death-bed, and the father standing by the bedside of the dying wife and mother, gave the babe to this plaintiff.

Shall the man whose dog, ten years after those relations were created, killed this boy, be heard to say that he who had cared for the boy as his own had no rights that even a dog was bound to respect?

II. What is necessary to constitute an adoption at common law? Bouvier says "it is the act by which a person takes the child of another into his family and treats him as his own." Bouv. Dict., "Adoption;" Abbott Dict. 36, subject, "Adopt;" Cooley Torts 235, subject, "Adopted Children;" Schou. Dom. Rel. 315; Burrill Dict., "Adoption;" Inst. I, 11 I.

The relation of parent and child is established *prima facie* by evidence that the parties lived together, and recognized by their acts the existence of that relation. *Dalton* v. *Bethlehem,* 20 N. H. 506; Schou. Dom. Rel. 321.

It is true, as a general rule, that when a step-father receives the children of his wife into his family, and adopts them as his children, he cannot charge them for their support, nor can they claim from him pay for services, he having placed himself *in loco parentis.* In such case the relation of parent and child attaches, and continues until the connection is dissolved. He who receives and treats a child in such a manner as to raise the presumption that he intends to create the relation of parent and child, and that relation being assumed, all parties are bound by it so long as it continues. *Mowbry* v. *Mowbry,* 64 Ill. 387.

By admitting the child into his family, and treating him as a member thereof, he voluntarily assumed the relation to him of parent. When this is done, the reciprocal rights, obligations, and duties of parent and child attach, and continue so long as this assumed relation continues. *Brush* v. *Blanchard,* 18 Ill. 47; 2 Kent Com. 192; *Stone* v. *Carr,* 3 Esp. 1.

Any one standing *in loco parentis* may bring his suit, and he has all the rights of the natural parent. Wood Mas. & S. 447, *s.* 227.

In *Moritz* v. *Garnhart,* 7 Watts (Penn.) 303, 304, *Gibson,* C. J., in discussing this question says,—"Who has not seen an adopted child become an object of as tender solicitude as if it had issued from its foster-father's loins?—and can it be said that having bestowed his affections on it and reared it by his bounty, he yet shall not be permitted to exercise the right of a father to it against an

intermeddler? It would be a reproach to the law if he should not." One standing *in loco parentis* has all the rights and is subject to all the liabilities of a natural parent.

In Cooley on Torts 42, note 1, he says the adoption under the statutes of the states only fixes the relations under the laws of descent.

In the same place he says, " Step-children and adopted children who are received into a family stand for the time being in the position of children,"—and cites *Mulhern* v. *McDavitt,* 16 Gray 404; *Freto* v. *Brown,* 4 Mass. 675; *Meyer* v. *Temme,* 72 Ill. 574; *Mowbry* v. *Mowbry,* 64 Ill 383; *Bond* v. *Lockwood,* 33 Ill. 212; *Brush* v. *Blanchard,* 18 Ill. 46; *Williams* v. *Hutchinson,* 3 N. Y. 312; *Sharp* v. *Cropsey,* 11 Barb. 226; *Defrance* v. *Austin,* 9 Penn. St. 309; *Lantz* v. *Frey,* 19 Penn. St. 366; *Andrus* v. *Foster,* 17 Vt. 556; *Lunay* v. *Vantyne,* 40 Vt. 501; *Hussey* v. *Roundtree,* Busbee 110; *Gillett* v. *Camp,* 27 Mo. 541; *Murdock* v. *Murdock,* 7 Cal. 511; *Sword* v. *Keith,* 31 Mich. 247; *Ruckman's Appeal,* 61 Penn. St. 251.

" One who receives children into his family and treats them as members of his family, in such a manner as to raise a presumption of his intention to create the relations of parent and child, thereby assumes a liability for their support and acquires the same right to their custody and services as had their real parents." 5 Wait Act. & Def. 55, *s.* 3.

"The doctrine on the subject, however, seems to be well settled upon the authority of subsequent cases in England, as well as the decisions of the courts of this country. There is no obligation on the part of the step-father to provide for the children of his wife by a former husband, by virtue merely of his marriage with their mother. He may refuse to provide for them, and could not be compelled to do so. The liability in such cases depends upon the relation he chooses to assume in reference to them. If he holds them out to the world as members of his family, he stands *in loco parentis,* and incurs the same liability with respect to them that he is under to his own children. And the presumption in such case is, that they deal with each other as parent and child, not as master and servant. This relation being established, the reciprocal rights, duties, and obligations pertaining to it arise between them the same as if he were their natural father." *St. Ferdinand Loretta Academy* v. *Bobb,* 52 Mo. 360.

*In the matter of Joseph Murphy,* 12 How. Pr. 513, is a case exactly in point. The facts are precisely the same as in the case at bar. A child in infancy was given verbally to an uncle and aunt, who took its custody, care, and tuition for nine successive years. The court held that its adopted parents, as against its natural parents, had paramount legal claims to the custody and services of the child. 2 Kent 185.

Further authorities upon this point seem unnecessary, as there is no conflict.

Independent of any such relation as parent and child, this plaintiff may recover upon the ground that the relation of master and servant existed, and this defendant is estopped from denying that such relation existed. *Freto* v. *Brown*, 4 Mass. 675; *Campbell* v. *Cooper*, 34 N. H. 68; Cooley Torts, 241; Wood Mas. & S. 447, 448.

III. For what can the plaintiff recover? We contend that this statute should have a liberal construction, as the object was to protect from injury of every kind by dogs. *McCarthy* v. *Guild*, 12 Met. 292. We ask the attention of the court to the case last cited.

In an action for damages for an injury resulting in the death of a minor child, the parents may recover the pecuniary value of the child's services during his minority, together with the expenses of care and attention, medical attendance, etc., during his disability in consequence of the injury. Field Dam. 507; *Penn. R. Co.* v. *Zebe*, 33 Penn. St. 318; *Condon* v. *The Great S. W. Railway Co.*, 16 Irish L. R. (N. S.) 415; *Potter* v. *Chicago & N. W. R. C.*, 21 Wis. 377; 1 Southern Law Review (N. S.) 719.

In *Ford* v. *Monroe*, 20 Wend. 210, it was held that the loss of services of the child during minority, and expenses occasioned by the sickness of the plaintiff caused by the shock to her maternal feelings, were proper items of damages, the same being laid as special damages in the declaration.

In *Traver* v. *Eighth Ave. R. R. Co.*, 3 Keyes (N. Y.) 497, the court held that a parent may recover for the loss of the child's services to the age of twenty-one. *Caldwell* v. *Brown*, 53 Penn. St. 453; *State of Maryland* v. *B. & O. R. R. Co.*, 24 Md. 84; *Penn. R. Co.* v. *Kelly*, 31 Penn. St. 372; *Telfer, Adm'r*, v. *N. R. R. Co.*, 30 N. J. 198; *Walters* v. *Chicago, R. I. & P. R. R. Co.*, 36 Iowa 458; *Black* v. *Carrollton R. R. Co.*, 10 La. An. 33; Wood Mas. & S. 447, 448, s. 227.

See *Sullivan* v. *Union Pacific R. R. Co.*, 1 Cent. L. J. 595, opinion by *Dillon*, J., which is an exhaustive review of the whole subject. Damages are not to be given merely in reference to the loss of a legal right; they should be calculated in reference to a reasonable expectation of pecuniary benefit, as of right or otherwise, from the continuance of the life of the deceased. *Franklin* v. *S. E. Railway Co.*, 3 H. & N. 211; *Ihl* v. *42d St. R. Co.*, 47 N. Y. (2 Sick.) 317; *Kesler* v. *Smith*, 66 N. C. 154; *Pym* v. *G. N. Railway Co.*, 2 Best & S. 759; *Penn. R. R. Co.* v. *Bantom*, 54 Penn. St. 495; *Grotenkemper* v. *Harris*, 25 Ohio St. 510; *Dalton* v. *S. E. Railway Co.*, 4 C. B. (N. S.) 296.

So, under the English act, where it appeared, in an action by the father for an injury resulting in the death of his son, that the father was old and infirm, and the son young and earning good wages, and had assisted his father, and that the father had a reasonable expectation of pecuniary benefit from the continuance of the son's life, the court held that the action was maintainable. Field Dam. 507,

citing *Franklin* v. *S. E. Railway Co.*, 3 H. & N. 211; *Dalton* v. *S. E. Railway Co.*, 4 C. B. (N. S.) 296; 27 L. J. R., C. P., 227.

But the prospective damages for the loss occasioned by the death of a child are usually limited to the period of minority. Field Dam. 508.

We claim that the relation of parent and child existed, and that we are entitled to recover as damages, in addition to the expenses incident to the sickness and death of the child, the loss of services during his minority, and that the authorities above cited are conclusive upon this point.

*Wyatt* v. *Williams*, 43 N. H. 107, cited by the defendant's counsel, was a suit brought by a widow at common law for the felonious killing of her husband. The court held that at common law the action could not be maintained. Ours is an action under the statute, and the case cited does not apply. The neglect of the plaintiff to conform to the statute does not excuse or release the defendant from his liability for the injuries to the child. *Campbell* v. *Cooper*, 34 N. H. 68; *Freto* v. *Brown*, 4 Mass. 675.

The plaintiff had always maintained and never denied the child to be his by adoption. Can the defendant, for the purpose of avoiding the payment of damages for injury to the child, be allowed to set up the plea that the child was not adopted, a plea which the plaintiff could not have set up for himself?

*Stevens*, for the defendant.

I. The writ alleges that the deceased child was the son of the plaintiff. It seems to me quite unnecessary to argue against this position, as the case shows that he was not the son, either by nature or adoption.

II. The case, then, must rest upon the relation of master and servant. If that did not exist, I do not see how the action can be maintained. The case shows no such relation. There is no statement or proof of a service owing by the deceased to the plaintiff. Such service must be founded upon contract, and the case shows there was no such contract. "The child was given by its parents to the plaintiff, when a few months old, and had resided in the plaintiff's family and been treated as his own child." There was not even an attempt to make a contract out of which the relation of master and servant could arise. Accepting the gift of the infant, and treating it till its death as a child, is not only no evidence of the relation of master and servant, but is fatal to any presumption of that character. *Campbell* v. *Cooper*, 34 N. H. 49; *Hall* v. *Hall*, 44 N. H. 295; *Munger* v. *Munger*, 33 N. H. 581; *Seavey* v. *Seavey*, 37 N. H. 125.

III. Damages cannot be recovered for loss of services accruing after the death. *Wyatt* v. *Williams*, 43 N. H. 107, and authorities there cited.

IV. The statute upon which this action is founded is penal, and was barred by the statute. G. L., c. 266, s. 10; *Barnett* v. *The Atlantic & Pacific R. R. Co.*, 6 Rep. 783.

STANLEY, J. The court were authorized to allow the amendment, to prevent injustice. Whether or not it was necessary for this purpose depended upon facts, the existence of which must be established at the trial term, where the question of amendment is to be determined.

The defendant claims that the plaintiff cannot recover, because neither the relation of parent and child, nor that of master and servant, existed between the plaintiff and the deceased; but the facts stated are evidence tending to show that the plaintiff stood *in loco parentis* to the child, and while this relation existed, the plaintiff was entitled to all the rights of a parent. *Freto* v. *Brown*, 4 Mass. 675; *Mulhern* v. *McDavitt*, 16 Gray 404; *Williams* v. *Hutchinson*, 3 N. Y. 312; Cooley Torts 235. This being the case, the plaintiff is entitled to recover for nursing and care of the child after the injury and while it lived, and for medicines and medical attendance. For the personal injury to the child he cannot recover ( *Hall* v. Hollander, 4 B. & C. 660; *Dennis* v. *Clark*, 2 Cush. 347, 351; Bouv. Inst., s. 2289), nor for loss of service, without evidence to that effect. *Woodward* v. *Washburn*, 3 Denio 369, 371; *Stephenson* v. *Hall*, 14 Barb. 222; *Hall* v. *Hollander, supra; Dennis* v. *Clark, supra; Franklin* v. *South Eastern Railway*, 3 H. & N. 211; Cooley Torts 226; Wood Mas. & S. 441, 442, 443.

The right of the parent to recover for loss of services caused by injuries inflicted by third persons, is founded upon the fact that he is entitled to the earnings of the child during its infancy ( *Jenness* v. *Emerson*, 15 N. H. 486; Schou. Dom. Rel. 344, 631); and it stands on the same ground as the right of a master to the labor and services of his apprentices. Schou. Dom. Rel., *supra;* 2 Kent Com. 192 *et seq.* The plaintiff standing to the child *in loco parentis*, we cannot say that he is not entitled to recover for the loss of his services. His right to recover is not absolute;—it depends upon whether there has in truth been a loss of services; whether the child was capable of rendering services; and whether the plaintiff has been deprived of the services by the defendant's wrongful act. If the jury should so find, the plaintiff is entitled to damages from the time of the injury until the child's death,—such damages as will be a full compensation for the loss sustained during that period. Ruth. Inst., B. 1, c. 22, s. 1; Greenl. Evid., s. 253; Field Dam. 21; *Wyatt* v. *Williams*, 43 N. H. 107. Whether he can recover for loss of service after the death and during its infancy, is a question on which we express no opinion.

The point that the action is penal, and is therefore barred by the statute (G. L., c. 266, s. 10), cannot be sustained. The statute cited does not apply to cases of unliquidated damages, like the pres-

ent case, even though the statute on which it is founded may be in some respects penal. It applies to cases where the amount of the penalty is fixed in the statute.

*Case discharged.*

ALLEN, J., did not sit: the others concurred.