In the Matter of the Claim of NUNZIATO DI DONATO, Respondent, against MORRIS ROSENBERG and Another, Appellants.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, November 17, 1927.

Workmen's compensation — award — lump sum award — award justified under Workmen's Compensation Law, § 25, to enable widow to procure home — accumulated award previously made used in part payment of home is protected from creditors under Workmen's Compensation Law, § 33 — part of lump sum award cannot be used in payment of debts — award will not be made until protection of widow is assured.

The claimant, a widow, seeks a lump sum award under section 25 of the Workmen's Compensation Law on the ground that it would be in the interests of justice to make such an award. It appears that a prior award of $3,146.36, which had accumulated, has been paid; that the widow has purchased a home for $13,050, on which she has paid $3,000; that there are two mortgages on the home; that the lump sum award as commuted is $7,144.60; that she is in debt $3,835 and desires to make necessary repairs, purchase furniture and pay her debts in addition to expending a part of the lump sum award in reducing the mortgages; that one of her eight children is employed and that other income is derived from the rent of a garage and the rent of one apartment.

It would seem to be in the interests of justice to make the lump sum award, provided the court is assured that the widow will be protected in securing her home and that the award will be used in reducing the mortgage debt.

The amount paid by the widow on the home from the original accumulated award is protected from the debts of creditors by section 33 of the Workmen's Compensation Law, and likewise no part of the lump sum award can be used to pay the debts of creditors.

The award is reversed and the claim is remitted to take further proof and to give further protection to the interests of the widow.

APPEAL by Morris Rosenberg and another from an award of the State Industrial Board, made on the 27th day of September, 1926.

*Alfred W. Andrews* [*Edward P. Lyon* and *Harold S. Lyon* of counsel], for the appellants.

VAN KIRK, J. Death benefits awards were made to the widow and children of the deceased. On application of the widow the

award has been commuted and a lump sum award of $7,144.60 made. The appellants' claim is that this commutation award is not shown to be " in the interests of justice." (Workmen's Compensation Law, § 25, as amd. by Laws of 1926, chap. 260; since amd. by Laws of 1927, chap. 497.)

Payment of the death benefits award was delayed about three years. The employee was killed March 30, 1923. Not until April 15, 1926, was any award paid; then the accumulated award was paid in the sum of $3,146.36. The widow is the mother of eight children. One child was born about one week after the employee's death; the eldest child was sixteen years of age at that time and the widow thirty-five. The widow had great trouble in securing and keeping rented places. She was unable at times to pay her rent and her large family was a hindrance. She stated that, between the death of her husband and the payment of the accumulated award, she had borrowed from relatives and friends $1,450, and contracted debts for living expenses in the sum of $2,385, a total of $3,835, which she still owes.

Before the accumulated award was paid in 1926 she had made a contract to purchase a home for $13,050. Immediately after the payment of this award she closed this contract; she paid $3,000 of the award on the purchase price, assumed the payment of a $5,000 mortgage on the property, bearing interest at six per cent and due in three years, and she gave a second mortgage for $5,050, bearing six per cent interest and requiring quarterly payments of $150 each and payment of the whole amount in four years. This transaction was completed in June, 1926. Neither mortgage is in the record and we have no further evidence as to the terms of either.

An expert in real estate values in the neighborhood testified that, at the time of the hearing, this property was worth $15,000, and that generally it was in good condition and arranged practically as a two-tenement house, there being kitchen facilities on the first and second floors. She made this application for commutation of the award to her in order that she might pay her indebtedness, repair and furnish the house and have a home for her children. In his memorandum of decision Mr. Cullen, a member of the Industrial Board, made this statement: " The widow has purchased a home for herself and children at a cost of $13,050, of which amount $3,050 was paid in cash and there are first and second mortgages of $5,000 each on the property." (The amount paid was in fact $3,000.) " In addition she is in debt to the amount of $3,835 for rent and to tradespeople for food, clothing, etc. She desires to make necessary repairs, the cost of which is estimated at $200 and to buy furnishings at an estimated cost of $700. A married daughter rents the

40

upper part of the house at a rental of $40 per month. * * * The income exclusive of the widow's compensation is set at $2,629.72 per year made up as follows: Children's compensation per year, $481.72; rent of floor in house per year, $480; salary of oldest son per year (assuming he has steady work), $1,560; rent of garage per year, $108. The yearly expenses are $1,961 as follows: Interest on mortgages, $600; payment of second mortgage at $150 per quarter, $600; insurance, $20; water rent, $20; coal, $150; light and heat (gas), $96; repairs, $200; taxes, $275. The widow desires to pay her debts, make the repairs and furnish the house. When this is done there will remain of the lump sum payment approximately $2,409, of which amount the sum of $2,000 will be applied to the reduction of the second mortgage, which will reduce the interest thereon $120 per year. I find that the commutation of the widow's compensation to one lump sum payment would be in the interest of justice." There is evidence establishing the facts substantially as above stated and the intent of the widow in using the lump sum award. We may assume that the Board will require that the disposition of the fund be made as above stated.

There is a strong appeal in this record to sustain the conclusion reached by the Industrial Board; and, if there is reasonable assurance that the widow can carry out her plan and protect the property, the award should be allowed. We believe, however, that further evidence should be in the record before the action of the Industrial Board is approved. The first mortgage becomes due in three years. It is probable that, upon property of such value, she could procure an extension of this mortgage, either from the present mortgagee, or from some investor who would take over the mortgage. The second mortgage, however, requires a payment of $150 quarterly and of the whole sum in four years; also it probably contains a clause that, upon default in making any payment for a certain number of days, the whole amount of the mortgage shall, at the election of the mortgagee, become due and payable. It does not appear whether by the terms of the second mortgage an additional payment thereon could be made. To assure protection of the widow's interest we think this bond and mortgage should be in the record.

To live and make required payments on this property the widow is relying largely upon the earnings of her son, now about seventeen years of age. He is a bricklayer's helper; there is no proof that he has steady work; and yet, in computing her expected income, his earnings are calculated at $1,560 per year. The death benefits payable to the minor children amount at present to less than $10 per week. As each child becomes eighteen years of age, this amount

will be reduced, unless the award is modified. As the years pass the children will probably be able to earn. The son who is now earning and the children who become of earning age may be willing to turn over their earnings to the mother to help pay for the home. There may from these circumstances be a reasonable conclusion that, if the widow is not pressed for payment too closely, she may work out her project. But we are asked to allow the use of $3,835 of compensation money for the payment of debts. This money is within the intent of the statute absolutely devoted to the sustenance of the beneficiaries. Section 33 of the act is as follows: " Compensation or benefits due under this chapter shall not be assigned, released or commuted, except as provided by this chapter, and shall be exempt from all claims of creditors and from levy, execution and attachment or other remedy for recovery or collection of a debt, which exemption may not be waived. Compensation and benefits shall be paid only to employees or their dependents." It is true that the widow applied the money borrowed and the articles purchased, for which she owes, to the support of the family; and, if the death benefits award had been paid weekly, the moneys would have been devoted to this purpose. The accumulated award could have been used to discharge this indebtedness, but it was not; it was invested in a home to the extent of $3,000. This $3,000 is in jeopardy, unless the home is sold or the widow is able to make her payments. We think there are substantial reasons why the title to the home should be retained by the widow, if possible. If the funds available from the lump sum award, above the cost of repairs and furnishings, are applied in payment of the mortgages, the ownership of the home will be much better assured. She could pay $6,000 on the mortgages and her interest charge on the remainder would be $240 per year. This could be paid from the benefits to the children. Probably the mortgagees would accept the cash payment now. The payment of the widow's debts is commendable, but by statute it is not intended that the proceeds of an award shall be available for such purpose and we think the Industrial Board and the court are called upon to protect the beneficiaries first.

But it is said that the creditors are pressing the widow for padment of her debts and that they threaten to procure judgment any sell the real estate. Unless there be some equity in the property above the two mortgages and the compensation money invested, we think that the creditors have no redress against the property; that the $3,000 of compensation money already put in the property and such further compensation money as she shall pay in are protected by the statute as above quoted. The statute should be

liberally construed in favor of the beneficiary. A place in which to live is an absolute necessity to the family. A home purchased by compensation money was intended to be protected as well as the money itself while still in the hands of the beneficiary. The money put into this property may be and is identified as " compensation or benefits." We think the same rule should be applied in construing this statute as has been applied in construing section 667 of the Civil Practice Act, which protects pension money, and the acts of the Legislature which preceded it. Real estate purchased with pension money is exempt from execution. (*Benedict* v. *Higgins,* 165 App. Div. 611; *Yates County Nat. Bank* v. *Carpenter,* 119 N. Y. 550.) We are asked to consent to the diversion of moneys, which were intended solely for the support of the beneficiaries, from that intended use to the payment of debts. This widow and her family of minor children need this compensation money in order to subsist, and we think the lump sum award should be devoted to that end. A home is a necessary part of subsistence. If she could make the payments upon the mortgages, she could make payments upon the indebtedness which should satisfy her creditors.

The evidence as it now stands does not support the finding that the commutation, with the proposed use of the funds, is in the interests of justice. The award should, therefore, be reversed and the claim remitted to take further proof and to give further protection to the interests of the widow.

COCHRANE, P. J., McCANN, DAVIS and WHITMYER, JJ., concur.

Award reversed and claim remitted to the State Industrial Board to take further proof, to give further protection to the interests of the widow, in accordance with the opinion.