## Commonwealth v. Peterson et al.

*Franklin E. Barr*, Assistant District Attorney, for Commonwealth.

*George H. Detweiler*, for defendants.

LEWIS, J., May 6, 1930.—William E. Peterson, one of the defendants, during the course of his employment with the Manhattan Fire Proofing Company, sustained injuries, as a consequence of which he has been disabled since April 10, 1929. He became entitled to receive, and is now receiving, compensation under the Workmen's Compensation Law of the State of Pennsylvania, amounting to $14.30 per week.

His wife, Daisy Peterson, filed her petition in this court, asking for an order for support of herself and her two minor children, alleging a desertion by her husband and a failure to provide for his family.

The Commonwealth, in pursuance of the provisions of the act of assembly, issued its warrant of seizure and has summoned the Employers' Liability Assurance Corporation, Ltd., the insurance carrier of the employer, as garnishee.

The garnishee in this proceeding has raised the question of the right of the Commonwealth to seize the payments due Peterson under the provisions of the Workmen's Compensation Act.

Section 318 of the Act of June 2, 1915, P. L. 736, known as the Workmen's Compensation Law, provides:

"The right of compensation granted by this article of this act shall have the same preference (without limit of amount) against the assets of an employer, liable for such compensation, as is now or may hereafter be allowed

by law for a claim for unpaid wages for labor: Provided, however, That no claim for compensation shall have priority over any judgment, mortgage or conveyance of land recorded prior to the filing of the petition, award or agreement as to compensation in the office of the prothonotary of the county in which the land is situated. Claims for payments due under this article of this act shall not be assignable, and (except as provided in section five hundred and one of article five hereof) shall be exempt from all claims of creditors, and from levy, execution or attachment, which exemption may not be waived."

The question, therefore, to be determined is whether the weekly payments under the Workmen's Compensation Act are immune from diligence on the part of the wife and children of the injured workman. The question is a new one and does not appear to have been judicially determined in our state.

The Workmen's Compensation Act was passed pursuant to a belief that it was to public interest, and, therefore, ought to be made the public policy, to have a workman, injured in the course of his employment, supported for a reasonable time by the industry to which he contributed his labor. "The intention of the act [Workmen's Compensation Act], then, is to secure workmen and their dependents against becoming objects of charity by making reasonable compensation for all such calamities as are incidental to the employment:" 28 Ruling Case Law, 714, § 2.

In our state it has been said that the statute (Workmen's Compensation Act) is a remedial act passed for the benefit of workers (Pater v. Superior Steel Co., 263 Pa. 244) and is authorized by the police power (Lubanski et al. v. Delaware, Lackawanna & Western R. R. Co., 81 Pa. Superior Ct. 538), and, therefore, should be liberally construed.

And in a recent utterance of our Supreme Court it was held: "As it is in derogation of the common law, it must receive a strict construction, but not such a construction as would in any way fetter its humane purposes:" Zimmer v. Casey, 296 Pa. 529.

In its endeavor to guard the interests of the workman, our act prescribes in detail the manner of its application and the items that can be charged against compensation are set forth and defined by the act. The attorney through whose efforts compensation has been recovered must justify his claim and secure the approval of the authorities in charge of administering the act. It prohibits an assignment of compensation payments and operates to prevent an employer from deducting from payments made any money due from the employee for supplies furnished, even though the employee had agreed that the price of the supplies furnished should be deducted from his compensation money.

"To decide otherwise would seriously complicate the administration of the Compensation Act. The law provides for the payment of compensation in money and in no other way: Barnett v. Delaware, Lackawanna & Western Ry. Co., 8 Dept. Reps. 2457."

It has been held that the defendant in a judgment entered on the compensation claim cannot claim the usual exemption allowed upon an execution: Lampe v. Southwark Cornice and Roofing Works, 28 Dist. R. 615.

It is clear, therefore, that this humanitarian measure (The Workmen's Compensation Act) was enacted in response to a strong public sentiment, that the remedies afforded by the act should give the employee full measure of protection against creditors, and that the fundamental thought underlying the legislation was "that no one should come between the workman and the benefit to which he should be found entitled."

See article in 28 Col. Law Rev. 985, which deals with the extent to which workmen's compensation awards are protected against creditors. See, also, 77 University of Pennsylvania Law Rev. 144; Immunity of Workmen's Compensation Award from Attachment, 14 Cornell Law Quar. 111; Mackin *v.* Detroit-Timkin Axle Co., 187 Mich. 8, 153 N. W. Repr. 49; Di Donato *v.* Rosenberg, 221 App. Div. 624; 225 N. Y. Supp. 46.

This brings us to the substantial question involved as to whether an order for support made against a deserting husband for the benefit of his wife and children creates a relationship of debtor and creditor between the husband and the wife. "The term [creditor] commonly signifies one who holds some contractual obligation against another, and is ordinarily used as the antonym or correlative of 'debtor,' involving both a debt and a credit, for, unless there is a debtor, one whose duty it is to pay, and of whom the debt can be demanded, there cannot be a creditor to enforce and compel payment. The word is susceptible of latitudinous construction. In a strict literal sense, however, which may also be said to be its well established, customary, commercial and legal sense, the term signifies one who voluntarily trusts or gives credit to another for money or other property; one to whom a debt is due from another person, called the debtor; one to whom a sum is due and which is to be paid after allowing all just credits:" 15 Corpus Juris, 1370.

The obligation to support wife and children is not of the nature of an ordinary indebtedness and differs from the ordinary judgment or decree for the payment of money. The husband owes the wife no specific amount of money, the allowance of support is not technically a debt; it is making definite an imperfect obligation, that of support; it is compelling the husband to perform a duty. The obligation arises from the duty which the husband owes to the public as well as to the wife and children.

The language of Mr. Justice Frazer, in Moorehead's Estate, 289 Pa. 542, is peculiarly applicable to this situation:

" 'The marriage contract once entered upon, becomes a relation rather than a contract and invests each party with a status towards the other and society at large, involving duties and responsibilities which are no longer matter for private regulation but concern to the Commonwealth. And in this aspect marriage is a social institution, *publici juris,* being the foundation of the family and the origin of domestic relations of the utmost importance to civilization and social progress; hence, the State is deeply concerned in its maintenance in purity and integrity:' Coy *v.* Humphreys, 125 S. W. Repr. 877.

"There is still another great factor to be considered in this case, the legal unity of husband and wife, and it is a unity which must continue to be recognized, however much modern laws enlarge the separate rights and privileges of each. And with this merger of existence and interests, established from the most ancient times in all civilized lands, how can it be claimed that the status of creditor and debtor is established between them, when it is a question of the mutual performance and fulfillment of fundamental duties as husband and wife which the obligations of humanity impose and the safety of society requires from both?

" 'The marriage contract has not the elements of ordinary contractual relations. That contract is a life contract, imposing upon the husband the support and maintenance of the wife in sickness and in health during life, contingent only on the termination by decree of court for statutory reasons:' Keeser on Marriage, § 55. 'The duty of the husband to support the wife is not dependent upon contract:' 30 Corpus Juris, 517.

"These are accordingly primal obligations under the marriage relation imposed immemorially upon the husband and which do not fall within the range of the nature or the meaning of a debt. Every debt, of course, is an obligation, but every obligation is not a debt: Sonnesyn v. Aiken, 97 N. W. Repr. 557. A debt is a sum of money due by contract, express or implied. But a tax is not a debt. It is not founded upon contract. It does not establish the relation of debtor and creditor between the taxpayer and the State: Perry v. Washburn, 28 Cal. 318. When an alien secures citizenship it become his duty to support and protect the Commonwealth as far as possible. But he has made no contract to that effect. Similarly, the duty of a husband to provide for and protect his family becomes a duty upon his marriage, a fundamental duty, not a debt."

The duty to provide maintenance for the wife and children is much more binding than a mere contractual obligation, and is not only a duty to her and his dependents but is as well an obligation to protect the public against being burdened with a charge. Ought we then to so construe a remedial statute, such as the Workmen's Compensation Act, as to defeat one of the very purposes which must have been in the mind of the Legislature when it placed the law upon our statute books?

In interpreting an ambiguous statute, the courts may, among other things, take into consideration the settled policy of the state in so far as it may throw light on the legislative intention, and a purpose to disregard sound public policy must not be attributed to the law-making power except upon most cogent evidence: 25 Ruling Case Law, 1040. We cannot adopt an interpretation which will lead to consequences that the Legislature of this state could not in reason have intended. We cannot subscribe to the idea that our Legislature intended by section 318 of the Workmen's Compensation Act to discard sound public policy. To deprive a wife and children of support out of her husband's income, no matter how obtained, would contravene every principle of public morals and public policy.

Liabilities of a bankrupt for the maintenance or support of a wife or child are not discharged in bankruptcy. Such liabilities are held to be in the nature of police regulations and not provable debts, and, hence, not discharged: 7 Remington on Bankruptcy, § 3556.

As was said in Wetmore v. Markoe, 196 U. S. 68: "The bankruptcy law should receive such an interpretation as will effectuate its beneficent purposes and not make it an instrument to deprive dependent wife and children of the support and maintenance due them from the husband and father, which it has ever been the purpose of the law to enforce."

And in Dunbar v. Dunbar, 190 U. S. 340, the court declared: "We think it was not the intention of Congress in passing a bankruptcy act to provide for the release of the father from his obligation to support his children by his discharge in bankruptcy."

And with reference to the obligation of the father to maintain an illegitimate child, it was said in Re Hubbard, 98 Fed. Repr. 710: "The bankruptcy act was passed to relieve persons bringing themselves within its provisions from the incubus of hopeless indebtedness; but it was not intended to, nor does it, subvert the higher rule which casts upon a parent the care and maintenance of his offspring," a duty whose performance is required by "the welfare of the state, as also every principle of law, statutory, natural and divine."

In construing various spendthrift trust provisions the courts have held that while they may protect the beneficiary from the claims of creditors or the consequences of his own improvidence, they are not protection against the obliga-

tion to support the beneficiary's wife and minor children: Moorehead's Estate, *supra;* Decker *v.* Directors of the Poor, 120 Pa. 272; Board of Charities and Corrections *v.* Moore, 6 Pa. C. C. Reps. 66.

In Board of Charities and Corrections *v.* Kennedy, 3 Dist. R. 231, it was held that a proviso contained in a will creating a trust, which declared that the payments to the beneficiary should not be anticipated and should not be liable to attachment or execution at the suit of any creditor, did not preclude the seizure and attachment of the interest of the beneficiary for the support of his wife and children, on the ground that "the obligation imposed by the laws upon every man to maintain his wife and children, is not a 'debt' within the legal definition of that term, but a duty, arising out of a provision of the laws, which no man can escape by any cunning device of conveyancing, or any provision inserted in any last will and testament, so long as he has property, the usufruct or income from which he is entitled to enjoy and which can be reached by the process of the court." It was further held, that had the will contained an express provision that the income of the fund bequeathed to the beneficiary should not be liable to seizure for the support of his wife and children, such provision would have been totally void and of no effect whatever in exempting him from this legal obligation, and that whatever is in his own power to enjoy may be seized and applied, so far as is requisite, to the necessary support of his wife and children if he has refused or failed to provide for them himself.

In Com. *v.* Cozens, 25 Dist. R. 177, it was held that, "taking the right of the beneficiary in its broadest sense, equity must consider that the support given to his wife and children is given to himself. The most that he can equitably ask for is a reasonable apportionment of the fund between him and them."

In a number of jurisdictions it has been held that a claim for alimony may be enforced against any exemptions which the statute grants the husband: Winter *v.* Winter, 95 Neb. 335. In Szymanski *v.* Szymanski, 176 N. W. Repr. 806, the court holds that it has authority to set aside specific property of the husband to the wife as alimony, whether exempt or not, and, therefore, it may set aside a homestead purchased by a retired soldier with the allowance made him by the Government.

In Tully *v.* Tully, 159 Mass. 91, pension money was subjected to an alimony judgment, though the Federal exemption statute was invoked. Allen, J., in the last cited case, said: "Pension money is designed in part to enable the pensioner to support his wife and family, and the statute of U. S. Rev. Stat., § 4747, should not be strained to enable him to avoid his duty."

In Zwingman *v.* Zwingman, 134 N. Y. Supp. 1077, property in a pension fund of a retired policeman was attached for the payment of alimony. The New York statute provides: "Moneys, securities and effects of the police pension fund, and all pensions granted and payable from said fund, shall be and are exempt from execution and from all process and proceedings to enjoin and recover the same by or on behalf of any creditor or person having or asserting any claims against, or debt, or liability of, any pensioner of said fund."

The court said: "It is contended in behalf of the defendant, who has removed from the state for the purpose of defeating a judgment rendered against him, that his property in this pension fund is exempt from the duty he owes to the State to support and maintain his wife; that, notwithstanding the legal oneness of the man and wife, which in this respect has not been changed by statute from the common law rule, the defendant is entitled to be

supported and sustained out of a trust fund created under the laws of the state, while his wife goes hungry. We do not believe the Legislature, in creating the police pension fund and exempting it from execution and other processes, ever intended that this exemption should be construed to deprive the wife of her legal and moral right to the support of her husband. The whole purpose of the statute is served when the fund is preserved for the use of the pensioner and those legally dependent upon him for support and maintenance—when it is held intact for the care of the woman who is, in law, but a part of himself, and entitled, with him, to share in the pension. . . ."

We think that the law must consider compensation given to an injured workman as not alone for his benefit but for the benefit of his wife and children as well. The most he can ask is an equitable apportionment of the payments between him and them. The order of support is the measurement by which the court makes specific a general duty to support created by the marital relations and by public policy. A support order is a sequestration and division of the property made on consideration of the circumstances of the family. Marriage furnishes the basis of permanent civilization. The duties assumed under it should be conscientiously discharged. Our courts will compel the enforcement of marriage obligations, and nothing should be permitted to be interposed by way of a bar or as a means of escaping from the duty which every man owes to support his family.

If Peterson were working and earning wages the court would have the undoubted right to seize whatever wages might be due him and apply them to the support of his family. In a large sense the compensation which he is receiving from the Employers' Liability Assurance Corporation, the co-defendant, takes the place of wages. There is no reason why they, too, ought not to be applied to the same purpose.

The warrant of seizure issued in this case is confirmed and the Employers' Liability Assurance Corporation, Ltd., is directed to pay to the Clerk of the Municipal Court, Domestic Relations Division, the sum of $7 a week for the wife and children of William E. Peterson.