Hillsborough
No. 84-184

CAROL M. MACARTHUR

v.

NASHUA CORPORATION & a.

April 11, 1985

*Devine, Millimet, Stahl & Branch*, of Manchester (*Kevin C. Devine* on the brief and orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Jeffrey H. Karlin* on the brief and orally), for the defendants, Nashua Corporation and Liberty Mutual Insurance Company.

KING, C.J. The sole issue presented for our consideration is whether RSA 281:2, IX includes within its definition of compensable "dependents" of deceased employees a dependent who is neither the natural nor the adopted child of the deceased, but with respect to whom the deceased stood in a relationship *in loco parentis*. The Trial Court (*Flynn*, J.), approving the recommendation of the Master (*Charles T. Gallagher*, Esq.), held that it did not. We reverse and remand.

The facts of this case are not in dispute. The master found that Roger M. MacArthur died in a Delta Airlines crash on July 31, 1973, while on business for Nashua Corporation. Compensation benefits were paid to his wife, Carol M. MacArthur (plaintiff) and the couple's natural children, but the compensation carrier, Liberty Mutual Insurance Company (defendant), refused to pay benefits to Nathan Wayne Burns, an American Indian child who had been in the custody of the MacArthurs since 1966.

After obtaining custody of Nathan, who is mentally retarded, in Omaha, Nebraska, the MacArthurs cared for and raised him as one of their own children. In 1970, when Mr. MacArthur was transferred to Nashua, New Hampshire, the MacArthurs met with Nathan's natural mother and decided that Nathan would accompany the family to New Hampshire. The MacArthurs agreed not to institute formal adoption proceedings because of the emotional trauma which had been experienced by Nathan's mother as a result of the adoption of another of her children by foster parents. Instead, an agreement was executed which purported to make the MacArthurs the legal guardians of Nathan. Since moving to New Hampshire in 1971, Nathan has not seen or heard from his natural mother.

RSA 281:22 (Supp. 1983) provides in part: "Compensation for Death. If death results from the injury, weekly compensation shall be paid to the dependents of the deceased employee as defined in RSA 281:2, IX . . . ." RSA 281:2, IX defines "dependents" as "the employee's widow, widower, children, parents, persons in the direct line of ascent or descent, or next of kin, who were wholly or partially dependent, in fact, upon the earnings of the employee for support at the time of the injury. Common law wife or husband of the deceased and posthumous children shall fall within the meaning of this paragraph."

The parties do not dispute the master's findings that Nathan was dependent on the MacArthurs financially and emotionally until the time of Mr. MacArthur's death, or that he is dependent on the plaintiff today. The dispute is purely one of statutory interpretation: whether Nathan Wayne Burns was a "dependent" of Roger MacAr-

thur under RSA 281:22 (Supp. 1983), which depends upon whether Nathan is one of the "children" of the deceased within the class of covered dependents. The term "children" is not defined in the statute.

When construing an ambiguous statute we look at both the legislative intent and the objective of the statute. *Hurley v. Public Service Co. of N.H.*, 123 N.H. 750, 754, 465 A.2d 1217, 1220 (1983).

In construing workers' compensation legislation, we are mindful that "[i]t is the judicial obligation to administer the Workmen's Compensation Act liberally." *Heinz v. Concord Union School Dist.*, 117 N.H. 214, 220, 371 A.2d 1161, 1165 (1977) (quoting *Binet v. Ocean Gate Bd. of Educ.*, 90 N.J. Super. 571, 574, 218 A.2d 869, 871 (1966)). "The basic rule is that the regular domestic-relations law of the state controls in compensation proceedings." 2 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 62.21(b) (1983). "Probably the most that can be said about the application of domestic relations law to compensation claims is that, because of the beneficent character of the legislation, established definitions and rules will usually be stretched as far as precedents will allow, to take care of meritorious cases of dependency." *Id.* at § 62.21(c).

The defendants argue primarily that a legislative purpose to exclude other than natural or legally adopted children can be seen in RSA 281:22, VI (Supp. 1983), as amended by Laws 1983, 392:10 to provide that if a child receiving compensation under the statute is legally adopted by someone else, compensation shall cease. Upon adoption, new rights accrue which extinguish prior existing rights, RSA 170-B:20, I to IV, and it is the defendants' argument that the dependent may not stand in a position to receive benefits from two sources.

This argument is inapposite in this case. First, the amendment referred to applies only to cases in which the child becomes legally adopted, terminating his relationship with the natural parent. It addresses a *change* in status and not whether the child may receive benefits in the first instance, prior to being legally adopted. Secondly, because of Nathan's lack of actual dependency upon either of his natural parents, Nathan could not recover benefits upon the death of or injury to his natural parents, under RSA 281:2, IX. Quite apart from the argument that he should not be entitled to receive compensation benefits with respect to both his natural and his adoptive parents, in this particular case he could receive benefits from *neither* his natural parents nor his *in loco parentis* guardians. In light of the broad remedial nature and purpose of the statute, *see*

*Gagne v. Greenhouses*, 99 N.H. 292, 295, 109 A.2d 840, 842 (1954), this result cannot have been intended by the legislature.

 The existence of the parental relationship is a factual question. *In re Diana P.*, 120 N.H. 791, 795, 424 A.2d 178, 180 (1980). "[A] person in loco parentis is one who intentionally accepts the rights and duties of natural parenthood with respect to a child not his own . . . ." *Id.* at 794–95, 424 A.2d at 180. "Where one stands in loco parentis to another, the rights and liabilities arising out of that relation are, as the words imply, substantially the same as between parent and child, although, of course, they may be enlarged or restricted by legislative enactment." 59 AM. JUR. 2d *Parent and Child* § 88 (1971); *see Whitaker v. Warren*, 60 N.H. 20 (1880) (one standing *in loco parentis* has all the rights of a natural parent).

 New Hampshire's Workers' Compensation Law contains no requirement of legal adoption which would expressly limit the child of a person *in loco parentis* from receiving benefits under the statute. In certain other instances, the legislature has specifically included legal adoption within its definition of "child" or "children." *See, e.g.*, RSA 546-A:1, IV (Uniform Civil Liability for Support Act); RSA 161-B:2, I (Supp. 1983) (support of dependent children). Contrary to the defendants' argument that this evidences an intent that in all cases "children" should be construed to include only natural or legally adopted children, we think that the absence of the limiting language shows an intent not to provide the limitation.

Several jurisdictions have espoused the liberality of workers' compensation laws and have applied the doctrine of *in loco parentis* to allow recovery of workers' compensation benefits. *See, e.g., Faber v. Industrial Com.*, 352 Ill. 115, 185 N.E. 255 (1933) (where statute provided for compensation to dependent parent of deceased employee, woman who stood *in loco parentis to* employee and who was dependent on him for support was entitled to compensation); *Custer v. Reitz Coal Co.*, 174 Pa. Super. 595, 101 A.2d 433 (1953) (where all incidents of parent-child relationship were present except that claimant did not give birth to decedent-employee, grandmother was "mother" within categories set forth in compensation laws); *Juneau Lumber Co. v. Alaska Industrial Board*, 122 F. Supp. 663 (D. Alaska 1954) (award of benefits to foster children to whom decedent stood *in loco parentis* upheld under statute providing benefits to "dependent children").

The defendants rebut with cases from other jurisdictions holding generally that the common law doctrine of *in loco parentis* cannot be used as a substitute for the formal requirements of the statute. In *Landon v. Motorola, Inc.*, 326 N.Y.S.2d 960 (N.Y. App. Div. 1971),

the court held that a child whose adoption was not formalized until after the death of the decedent employee was not entitled to benefits under a provision defining a "child" as one "legally adopted prior to the injury of the employee." The present case is distinguishable in that RSA 281:2 makes no reference to legal adoption.

A similar distinction can be made to the case of *Miles v. Theobald Industries*, 144 N.J. Super. 535, 366 A.2d 710 (App. Div. 1976), in which the court held that a person standing *in loco parentis* to a deceased employee could not recover benefits under a statute which specified "stepparents" as an additional class of dependents. The *Miles* court reasoned that had the legislature intended "parent" to cover those standing in the relationship of *in loco parentis* it would not have specified "stepparents." The court also noted that New Jersey law did not allow a child to receive benefits based on the relationship of *in loco parentis* since the statute specifically acknowledged legally adopted children. *Id.* at 538, 366 A.2d at 712. "In view of this it would be anomalous for us to now hold that when it is the 'child' who is the deceased worker, the person standing *in loco parentis* is a 'parent'." *Id.* at 539, 366 A.2d at 713.

Finally, defendants cite *Browning v. City of Huntsville*, 244 So. 2d 378 (Ala. App. 1971), in which the court held that an aunt could not receive benefits under the doctrine of *in loco parentis* as a dependent parent of an adult decedent-employee. The court interpreted the term "parent" strictly, noting that the legislature had broadly defined "child" but had not so defined the term "parent."

The foregoing cases are distinguishable in that the words of the statutes at issue were susceptible of the interpretation that the legislature intended to exclude persons claiming under an *in loco parentis* relationship, whether as a parent/dependent or as a child/dependent. RSA 281:2 states, but does not define, the terms except to include both widows and widowers, and posthumous children. While this inclusion militates against a broad interpretation of the term "children," it does not conclusively disclose an intent to exclude the class of dependents of which Nathan is a member.

■ We can see no reason to impute a legislative intent to limit death benefits under RSA 281:22 (Supp. 1983) to those having the relationship either of legally adopted children or of natural children. Permitting the payment of benefits to dependents in situations similar to Nathan's will not frustrate the purpose of the adoption statute. The doctrine of *in loco parentis* has long been recognized and has co-existed with the institution of legal adoption to provide rights and obligations to those in a factual parent-child relationship. *See Whitaker v. Warren*, 60 N.H. 20 (1880). The definitions under

the intestacy statute are not compelling precedent for the instant case because the statute, RSA 561:1, uses the term "issue," which more clearly connotes a biological relationship. The benevolent purpose of the workers' compensation statute belies the suggestion that the granting or withholding of compensation benefits was intended to turn on the technical requirement of legal adoption where all of the characteristics of the parent-child relationship are otherwise proven.

For these reasons we hold that a child with respect to whom the decedent stood *in loco parentis* is a "child" under RSA 281:2, IX and is one of the class of covered "dependents" provided for in RSA 281:22 (Supp. 1983).

*Reversed and remanded.*

SOUTER, J., concurred specially; the others concurred.

SOUTER, J., concurring specially: My concurrence in the foregoing opinion rests on a point that the majority do not emphasize. RSA 281:2, IX provides the definition of "dependents" for purposes of the workers' compensation law:

> "Dependents, shall mean the employee's widow, widower, children, parents, persons in the direct line of ascent or descent, or next of kin, who were wholly or partially dependent, in fact, upon the earnings of the employee for support at the time of the injury. Common law wife or husband of the deceased and posthumous children shall fall within the meaning of this paragraph."

The express inclusion of common law wife or husband within the class of dependents is evidence that generally the terms used to define "dependents" were intended to exclude those lacking a relationship to the decedent established by blood or by a legally recognized formality completed during the decedent's lifetime. On the face of the statute, therefore, I would find no source of ambiguity or vagueness that could justify construing "children" so broadly as to include the child of one who had stood *in loco parentis*.

Outside the statute, however, there is a basis for finding the ambiguity in "children," upon which the majority opinion rests. In *Whitaker v. Warren*, 60 N.H. 20 (1880), an adult who had stood *in loco parentis* to a child who had been killed brought a derivative action and a claim for loss of services. As one bar to the action, the defendant claimed that the decedent was not the plaintiff's child by blood or adoption. The court rejected this defense and held that the relationship between a child and an adult standing *in loco parentis*

was sufficient to entitle the plaintiff to bring his claims. Since that case has never been overruled, the "presumption that a statute is consistent with the common law" would support the argument, based on analogy with *Whitaker*, that a statute providing benefits to dependents would provide them to the dependent child of one who has stood *in loco parentis. See* 2A C. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 50.05, at 441 (4th ed. Singer, 1984).

Thus there is an apparent conflict between the statute's general indication of legislative intent and a common law rule that the statute did not specifically address. This tension creates the ambiguity about the scope of "children" as used in the statutory definition. On this basis I concur in the further reasoning of the majority opinion.