**In re Robert and Robin WILLIAMS, f/k/a Robin O'Malley, d/b/a Bottom Line Gifts, Appellants.**

**Jeffrey A. Schreiber, Trustee/Appellee.**

**Civ. No. 93–543–M.**

United States District Court, D. New Hampshire.

July 27, 1994.

**452**

Kathryn S. Williams, Epping, NH, for appellants.

Jay P. Johnson, Danvers, MA, for trustee.

## ORDER

McAULIFFE, District Judge.

If certain debtor-owned property is exempt from the reach of creditors under applicable state law, it is also exempt from the reach of creditors in a bankruptcy proceeding. 11 U.S.C. § 522 (1993). New Hampshire's Workers' Compensation Law[1] provides such an exemption for benefits paid to injured workers. The issue of law raised in this bankruptcy proceeding is whether that exemption extends to items purchased with

workers' compensation benefits, or is limited to the benefit payments themselves. As explained below, the exemption provided by N.H.Rev.Stat.Ann. ("RSA") Ch. 281–A:52 (1993) does extend to property acquired with benefits paid under the Workers' Compensation Law.

Accordingly, the bankruptcy court's contrary ruling is necessarily reversed.

### I. *Background*

Appellant Robert Williams suffered a workplace injury and brought a claim for benefits under New Hampshire's Workers' Compensation Law. In August of 1992, the state's Department of Labor approved a lump sum award in settlement of his claim, which, after deduction of legal fees, amounted to $36,000. *See* RSA 281–A:37 (1993). In September of 1992, appellant received a check for that amount, which he promptly deposited into his father's Fleet Bank account. The parties agree that $27,000 of the original benefit payment was retained by the father in payment of a prior debt. They also agree that within a few days after the benefit check was deposited appellant's father cashed a $9,000 check drawn on the account and gave the proceeds to appellant. Appellant, in turn, used that money to purchase a 1984 Chevrolet Corvette automobile. So, it seems the deposit was a transaction of convenience, with attributes of constructive trust relative to the $9,000 difference between the amount deposited and debt owed.

On April 5, 1993, appellant filed for relief under Chapter 7 of the United States Bankruptcy Code. He initially listed the Corvette as an asset in his bankruptcy schedules, but later moved to amend his petition to claim the vehicle exempt on grounds that it had been purchased with exempt workers' compensation benefits. The trustee objected, and, in orders dated September 29, 1993 and October 7, 1993, the bankruptcy court sustained his objection, holding that the car was not exempt because the benefit exemption provided by RSA 281–A:37 did not extend to tangible assets purchased with benefit funds. Appellant seeks review of that decision.

---

1. N.H.Rev.Stat.Ann. Ch. 281–A:52 (1993).

## II. *Discussion*

■ In reviewing a Bankruptcy Court's decision, findings of fact will not be disturbed unless "clearly erroneous." *Briden v. Foley,* 776 F.2d 379, 381 (1st Cir.1985); Fed. R.Bankr. 8013. Rulings of law are reviewed de novo. *In re Gronic Realty Trust,* 909 F.2d 624, 626–27 (1st Cir.1990). The facts of this case are not in dispute, and the question presented is entirely one of law. Accordingly, this court will redetermine the issue.

■ The question presented is whether appellant's car, purchased with money directly traceable to his workers' compensation benefits, is exempt from the claims of creditors under state law. Because the New Hampshire Supreme Court has not ruled on that precise issue, this court must endeavor to predict how the state's highest tribunal would likely resolve the matter. *Moores v. Greenberg,* 834 F.2d 1105, 1107 (1st Cir. 1987).

■ At the outset it is important to acknowledge that in New Hampshire workers' compensation legislation is construed liberally in favor of the injured employee. *MacArthur v. Nashua Corp.,* 126 N.H. 353, 356 493 A.2d 1126, 1127 (1985). Applying traditional tools of statutory construction in light of that principle, including review of the language, purpose, and history of the statutory exemption, the New Hampshire Supreme Court would likely find that the exemption does extend to tangible assets acquired with exempt benefit funds.

The exemption reads as follows:

281–A:52 Assignments; Exemption From Claims of Creditors; Attorneys' Fees.

Claims for compensation under this chapter shall not be assignable, and the compensation and any claim for compensation shall be exempt from all claims of creditors except as provided in this section. Claims for payment by physicians, hospitals, and for other remedial care chargeable to the employee and rendered in connection with a compensated injury and claims of attorneys for services rendered an employee in prosecuting a claim under this chapter, when approved by the superior court, may be enforced against the compensation award in such manner as the superior court may direct.

Claims for child support payments, pursuant to RSA 458–B, may be enforced against compensation awards.

More than sixty years ago, then Chief Judge Cardozo, interpreted New York's similar workers' compensation statute, observing that

"The Workmen's Compensation Law was framed to supply an injured workman with a substitute for wages during the whole or at least a part of the term of disability. * * * He was to have enough to sustain him in a fashion measurably consistent with his former habits of life during the trying days of readjustment. The cost of such support becomes a charge upon the industry without regard to fault. Rehabilitation of the man, not payment of his ancient debts, is the theme of the statute, and its animating motive."

*Surace v. Danna,* 248 N.Y. 18, 20–21, 161 N.E. 315, 315–16 (1928). New Hampshire's statutory scheme is similarly animated, *Armstrong v. Lake Tarleton Hotel Corp.,* 103 N.H. 450, 453, 174 A.2d 410 (1961), and its benefit exemption must also be construed in light of its purposes for, "[t]he end to be served, the mischief to be averted, supply the clews and the keys by which construction must be governed." *Id.,* 248 N.Y. at 25, 161 N.E.at 317.

■ Benefits paid under New Hampshire's Workers' Compensation Law are meant to compensate for loss of earning capacity. Those payments represent, or substitute for, future earnings that would have been available to an injured worker and his or her family, but for the workplace injury. *See Carbonneau v. United States Casualty Co.,* 97 N.H. 438, 441, 91 A.2d 449 (1952).

■ The term "compensation" as it is used in New Hampshire's law of course encompasses the actual money paid under its terms. *See In re Nolen,* 65 B.R. 1014 (Bankr.D.N.M.1986); *In re Covey,* 36 B.R. 696 (Bankr.W.D.Ark.1984); *Surace, supra.* Benefits are normally paid by check, and it follows that depositing a benefit check in a bank account does not, by itself, affect a

payment's exempt character. *See Vukovich v. Ossic*, 50 Ariz. 194, 70 P.2d 324 (1937); *East Moline Works Credit Union v. Linn*, 51 Ill.App.2d 97, 200 N.E.2d 910 (1964); *In re Frazier*, 116 B.R. 675 (Bankr.W.D.Wis.1990); *Surace*, 248 N.Y. at 20, 161 N.E. at 315.[2] To hold otherwise would undermine the legislature's purpose in creating the exemption in the first place. Injured workers would be incapable of putting their exempt benefits to practical use if the exemption dissolved upon negotiation of the benefit check itself, or upon its conversion into useful form, such as a bank demand deposit. Creditors would simply wait for the check to be converted or money deposited and then seize the bank account through attachment or trustee processes. As the bankruptcy court explained in this case, "it doesn't do you much good to have a check if you don't deposit it somewhere ... [I]f creditors could reach that, they could attach that account, and there goes your [workers]' comp. proceeds." Transcript at 13.

 Carrying reason a step further, there appears to be no basis upon which to distinguish a bank deposit comprised of workers' compensation benefits from a car acquired with compensation benefits. In each case, identifiable benefits are simply converted from one form of asset to another. In the latter example, the conversion would be entirely consistent with the benefit's purpose "to sustain [the injured employee] in a fashion measurably consistent with his [or her] former habits of life." *Surace*, 248 N.Y. at 21, 161 N.E. at 316.

Workers' compensation benefits are expected to be put to useful purposes, such as buying food, clothing, shelter, transportation, and other necessities for an injured employee and his or her family. The protection provided by the legislature when it exempted *"compensation ... from all claims of credi-*

tors,"* would indeed be *"next to futile"*, *Surace*, 248 N.Y. at 20, 161 N.E. at 315, if it operated only as a shield for benefits held in the form of a payment check, or demand deposit in a bank, but did not shield the things bought with the money made available. The legislature intended no such illusory protection.

While there is scant authority on this precise point, some support does exist. *See Di Donato v. Rosenberg*, 221 A.D. 624, 628, 225 N.Y.S. 46 (1927) ("[a] home purchased by compensation money was intended to be protected as well as the money itself while still in the hands of the beneficiary. The money put into this property may be and is identified as compensation or benefits."); *In Re Morrissey*, 391 F.Supp. 1350, 1352 (E.D.N.Y. 1975) (stating, in dicta, that "bankrupts may be entitled to exemption for workmen's compensation award funds spent on furniture"). Here, appellant's car was unquestionably purchased with money identifiable and identified as compensation benefits. Under these facts, the New Hampshire Supreme Court would likely hold that the exemption was intended to and does extend to tangible assets purchased with benefit proceeds, which likelihood governs this court's review of the bankruptcy court's ruling.

## III. *Conclusion*

New Hampshire's Workers' Compensation Law compensates workers for loss of future earning capacity occasioned by workplace injuries. The exemption provided in RSA 281–A:52 puts workers' compensation benefits beyond the reach of creditors, except as specifically provided by the legislature,[3] without regard to the form into which such benefits are converted, so long as the asset claimed to be exempt was acquired with money identifiable and identified as compensation benefits. To hold otherwise would be inconsistent with

---

**2.** Workers' compensation statutes in some jurisdictions are much more restrictive, exempting claims and benefits only before they are paid to the claimant. *See e.g., In re Bonzey*, 153 Bankr. 105 (Bankr.D.R.I.1993) interpreting a statute that provides: "No claims or *payments due* for compensation ... shall be assignable, or subject to attachment, or liable in any way for any debts...." R.I.Gen.Laws § 28–33–27 (1993) (emphasis added).

**3.** For example, defined creditors such as physicians and hospitals who provide care related to a workplace injury, attorneys assisting in prosecuting a compensation claim, and child support claimants, all may reach benefits paid under the Workers' Compensation Law. RSA 281–A:52.

the purposes of the statutory scheme as a whole, the exemption as written, and the legislature's intent. Accordingly, the orders of the bankruptcy court dated September 29, 1993, and October 7, 1993, are reversed.

SO ORDERED.