EGBERT G. HANDY *vs.* ST. PAUL GLOBE PUBLISHING COMPANY.

July 8, 1889.

**Illegal Contract—Pleading Illegality.**—Though it is sometimes necessary to plead the facts on which the illegality of a contract or transaction may depend, it is never necessary to plead the law. Whenever the fact appears, the parties may insist on the law applicable to it.

**Same—Entire Contract Illegal in Part—Advertising in Sunday Newspaper.**—A contract by which plaintiff was to have full charge and control of the real-estate advertising business in the daily, Sunday, and weekly editions of a newspaper, the owner to receive certain rates, the plaintiff to have all above those rates that he might receive for advertising, the contract to continue for five years, *held* to be an entire and indivisible contract, so that any taint of illegality in it avoids the whole.

**Same—Sunday Newspapers Illegal.**—Under Gen. St. 1878, c. 100, § 20, the issuing, publishing, and circulating a newspaper on Sunday was unlawful. It was not a work of necessity or charity.

**Same—Ratification—Change of Law.**—A contract, void because it stipulates for the doing of what is forbidden by law at the time when it is to be done, cannot be ratified, even at a time when, owing to a change in the law, it would be lawful to do the thing.

**Same—Ratification of Part of Contract.**—An entire contract cannot be ratified in part.

Plaintiff brought this action in the district court for Ramsey county, in April, 1887, to recover $150,000 damages for breach by defendant of a contract made in August, 1885, and stated in the opinion. The breach alleged was the refusal by defendant, on March 22, 1887, to recognize the contract or to receive or insert any advertisements for plaintiff. The answer denied the making of the alleged contract, admitted that plaintiff was employed as solicitor of advertising, and alleged neglect of duty by him in such employment and his discharge for that reason by defendant on March 22, 1887. At the trial, before *Kelly,* J., the plaintiff offered in evidence the written contract mentioned in the opinion, which was objected to as void on its face for want of mutuality and because against public policy, and was excluded, the plaintiff excepting. The plaintiff admitted that the Sunday Globe is published and circulated on Sunday, and then offered to prove that, for 20 months following the making of the contract, the defendant acted on it, received the benefits under it, paid plaintiff under it, and in every way ratified the making of it. The evidence offered was excluded, the plaintiff excepting, and a verdict was directed for defendant. The plaintiff appeals from an order refusing a new trial.

*Flandrau, Squires & Cutcheon,* for appellant.

*H. J. Horn* and *C. D. O'Brien,* for respondent.

GILFILLAN, C. J. The action is upon a contract pleaded in the complaint, not *in hæc verba,* but according to its supposed effect. The answer denied it; and, on the trial, the plaintiff offered in evidence a written contract between the parties, the provisions of which material to this controversy were as follows: The plaintiff, in consideration of being allowed the difference between the rates he might charge for advertising in the various issues of the St. Paul Globe newspaper and the rates thereinafter mentioned, agreed and contracted to take entire charge and control of the real-estate advertising business in the daily and Sunday and weekly Globe, and the defendant agreed, in consideration of such services, to put under his full charge and control all real-estate advertising business of defendant in the daily and Sunday and weekly Globe. The plaintiff agreed to pay the defendant certain specified rates for said real-estate ad-

vertising, and the defendant agreed to receive said rates as full payment for all said real-estate advertisements which might appear in the daily, weekly, or Sunday Globe, without regard to the amount plaintiff might charge and receive from advertisers. The contract was to continue for the term of five years, with the option in plaintiff to renew it for another term of five years, or for a shorter time; he to have the right to annul the agreement on giving 30 days' notice of his intention to do so. It was admitted by plaintiff, at the time of making the offer of this contract, that the Sunday Globe referred to in the contract was issued, published, and circulated on Sundays, though set up and printed on Saturdays. The contract was objected to as void upon its face for want of mutuality, and as being against public policy; and it appears to have been argued that it was against public policy because it was an agreement for a violation of the law in regard to Sunday. The court below sustained the objection. The plaintiff, of course, failed in his action, and he appeals from an order denying his motion for a new trial. The same objections are made to the contract here as were made below.

The plaintiff contends that, not having pleaded the illegality of the contract, defendant could not assert it on the trial. It is sometimes necessary to plead the facts upon which the illegality of a contract or transaction depends, but it is never necessary to plead the law. When the facts appear, either upon the pleadings or proofs, either party may insist upon the law applicable to such facts. In this case the plaintiff had, under the pleadings, to prove the contract upon which he sued. If it be void on its face, he, not the defendant, showed its illegality.

Though the contract appears in some respects a much more favorable one to the plaintiff than to the defendant, it is not wanting in mutuality of promises and engagements, so as to be without mutual considerations. What plaintiff is to do appears by implication rather than by express terms. Fairly construed, the contract created the relation of principal and agent between the defendant, as principal, and the plaintiff, as agent, for the management of defendant's real-estate advertising business,—that is, in the charge of procuring advertisements for so much of the space in defendant's paper as it

devoted to real-estate advertising,—and in this business there would arise the duty in the contract. There was, by implication, the promise of plaintiff to manage the business faithfully, and with due regard to the interest of his principal.

The question of the legality of the contract is, therefore, squarely presented; and with a view to that question, and to some propositions that are made in connection with it, it is necessary to say that the contract is entire, so that any taint of illegality in one part affects the whole of it. There is no way of severing it, so we can say that, although its stipulations as to the Sunday Globe may be in violation of law, and therefore void, yet those as to the daily and weekly Globe may be upheld, or so that, although for what was to be done under it prior to January 1, 1886, when the Penal Code went into effect, it was void, it might yet be upheld for all that it provided for after that date. To attempt that would be to attempt making another contract for the parties,—one that the present contract furnishes no reason to suppose they would have made for themselves. All of the provisions of the contract must, therefore, stand or fall together.

The plaintiff insists that the contract was not illegal, for it neither was executed on Sunday nor required plaintiff or defendant to do anything on Sunday. It bound defendant to maintain and issue a weekly, a daily, and Sunday Globe for the time specified in it, and it required plaintiff's services in the preparation and procuring, so far as related to the real-estate advertisements, of material for each of those editions of the paper. According to the terms of the contract, the defendant was no more at liberty to discontinue its Sunday edition than to discontinue its daily or weekly edition, or all its editions. The theory of the complaint is that it was bound to continue them all; so that, if to issue, publish, and circulate a newspaper on Sunday was against the law as it existed when this contract was made, then the parties contemplated and stipulated for a violation of the law by each. The law in reference to Sunday, in force at the time when the contract was made, was section 20, *c.* 100, Gen. St. 1878, as follows: "No person shall keep open his shop, warehouse, or workhouse, or shall do any manner of labor, business, or work, except only works

of necessity and charity, * * * on the Lord's day, commonly called Sunday; and every person so offending shall be punished by a fine," etc. A contract which requires or contemplates the doing of an act prohibited by law is absolutely void. No cases of the kind have been more frequently before the courts than contracts which were made on Sunday, or which required or provided that something prohibited by the statute should be done on Sunday; and in no instance has any court failed to declare such a contract void. Unless the issuing and circulating a newspaper on Sunday is, within the meaning of the statute, a work of necessity, it is prohibited by it as much as any other business or work. The newspaper is a necessity of modern life and business, but it does not follow that to issue and circulate it on Sunday is a necessity. There are a great many other kinds of business just as necessary; many, indeed most, kinds of manufactures and mercantile business are indispensable to the present needs of men, but no one would say that, because necessary generally, the prosecution of such business on Sunday is a work of necessity. That carrying on any business on Sunday may be profitable to the persons engaged in it; that it may serve the convenience or the tastes or wishes of the public generally,—is not the test the statute applies. To continue on that day the sale of dry-goods or groceries, or the keeping open of markets, saloons, theatres, or places of amusement, might be regarded by many as convenient and desirable, but that would not bring such business within the exception in the statute.

At the time this contract was made, the issuing, publishing, and circulating a newspaper on Sunday was contrary to law; and as the contract provided for that, and as it was indivisible, it was thereby rendered wholly void. The Penal Code went into effect January 1, 1886. Section 229 provides that certain kinds of articles, among them newspapers, may be sold in a quiet and orderly manner on Sunday. Plaintiff contends that the recognition of this contract, and the continuance of business under it for more than a year after the issuance of the Sunday paper became legal by the provisions of the Penal Code, constituted such a ratification of the contract as relieved it of any original taint of illegality. There is a difference

in the decisions on the question whether a contract, void merely because it was made on Sunday, may be ratified on a secular day, so as to become valid; but there is no conflict of decisions on the proposition that a contract, void because it stipulates for doing what the law prohibits, is incapable of being ratified. That is this case. The contract contemplated the doing what the law then in force prohibited, and for that reason it was void. It is true the law was so changed after the contract was made that, from the time of the change, it became, as plaintiff claims, lawful to do those things provided in the contract which were unlawful at the time it was made, and so that, as he claims, a contract like this, made after the change went into effect, would have been valid. But that could not affect the validity of the previous contract, which was void from the beginning. The parties might have made a new contract to commence on or after January 1, 1886; but, because of the illegality in it, they could not at any time ratify this contract from the beginning; and, because it is entire and indivisible, they could do nothing amounting to less than the making of a new contract, which could give vitality to it for the time since January 1, 1886. An entire contract must be ratified, if at all, as an entirety.

Order affirmed.