[L. A. No. 26328. In Bank. July 19, 1962.]

INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Plaintiff and Appellant, v. OHIO CASUALTY INSURANCE COMPANY, Defendant and Respondent.

144

William J. Mansell and H. Thomas Ellerby for Plaintiff and Appellant.

Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland as Amici Curiae on behalf of Plaintiff and Appellant.

Parker, Stanbury, McGee, Peckham & Garrett and Raymond G. Stanbury for Defendant and Respondent.

Sidney L. Weinstock, Weinstock, Anderson, Maloney & Chase, Smith & Wilson, Bronson, Bronson & McKinnon, McFarland & Ferdon and Berry, Davis, Channell & McNamara as Amici Curiae on behalf of Defendant and Respondent.

PETERS, J.—In this action between two insurance companies, the plaintiff, Interinsurance Exchange of the Automobile Club of Southern California (referred to hereafter as ''Exchange''), appeals from a judgment on the pleadings in favor of defendant, Ohio Casualty Insurance Company (referred to hereafter as ''Ohio'').

The facts involved are as follows: Effective April 1, 1957,

Ohio issued a one-year public liability automobile policy to Helms Pontiac-Cadillac, Inc., covering a certain 1951 Pontiac automobile. To this policy was attached an endorsement, entitled "GARAGE LIABILITY (Limited Additional Interest)" which, in defining an "insured" under the policy, contained this exclusion: "The words 'any person or organization legally responsible for the use thereof by any such partner, employee, director, stockholder or family member,' shall not be construed to mean, and the benefits of this policy shall not be extended to, any person or organization or the agent, servant or permittee of such person or organization, to which has been relinquished the use or possession of any automobile because such person or organization is a buyer or prospective buyer from the named insured or a customer or prospective customer of the named insured." Thus, the policy as written, purported to exclude the designated permittees from coverage.

Effective January 28, 1957, Exchange issued a one-year policy of public liability automobile insurance to one Ross M. Evenstad covering his Cadillac.

On September 14, 1957, while both policies were in effect, Evenstad delivered his Cadillac to Helms for the purpose of having it repaired, and Helms loaned to Evenstad the 1951 Pontiac referred to above. On that date Evenstad became involved in an automobile accident while driving the 1951 Pontiac loan car.

Pursuant to an agreement with Ohio, Exchange settled all claims against Evenstad and Helms. Exchange then brought this action for declaratory relief to have determined the rights, liabilities and duties of the insurance companies under the two policies. Ohio's motion for judgment on the pleadings was granted on the theory that Evenstad was excluded from the coverage of the Ohio-Helms policy under the terms of the garage liability endorsement quoted above.

Had the accident here involved happened just a few days earlier than it did, the parties concede, as they must, that the exclusion in the Ohio policy would have been illegal as against public policy under our decision in *Wildman* v. *Government Employees' Ins. Co.*, 48 Cal.2d 31 [307 P.2d 359]. It was there held that every automobile liability policy, as a matter of law, covered permissive users, and that any provision in the policy excluding them was illegal. The Ohio-Helms policy, which became effective after the *Wildman* decision, expressly

purported to exclude from its coverage certain permittees. This exclusionary clause, when the policy was written and first became effective, was contrary to the public policy of this state and was therefore invalid. Because of that public policy, permissive user coverage was written into the policy as a matter of law. (*Exchange Cas. & Surety Co.* v. *Scott*, 56 Cal.2d 613 [15 Cal.Rptr. 897, 364 P.2d 833]; *Royal Exchange Assur.* v. *Universal Underwriters Ins. Co.*, 188 Cal. App.2d 662 [10 Cal.Rptr. 686]; *Globe Indem. Co.* v. *Universal Underwriters Ins. Co.*, 201 Cal.App.2d 9 [20 Cal.Rptr. 73].)

The difficulty in the present case arises because section 415 of the Vehicle Code, one of the sections upon which *Wildman* was partially predicated, was amended effective September 11, 1957. In *American Automobile Ins. Co.* v. *Republic Indem. Co.*, 52 Cal.2d 507 [341 P.2d 675], it was held that this amendment would not be applied retroactively to an accident which occurred before its effective date. Thus, in that case, this court found it unnecessary to determine the effect, if any, of the 1957 legislation, which is one of the two issues now before us.

It is first contended by Ohio that the September 1957 amendment to section 415 repealed the rule of public policy announced in *Wildman,* and that the effect of such repeal was to reinstate and validate the exclusion of permittees clause in its policy with Helms. The assumed repeal had no such effect.

■■■ If it be assumed, contrary to the fact, that the 1957 amendment did, as Ohio contends, change the public policy of the state as announced in *Wildman,* such repeal would not have the effect of validating the exclusionary clause. [2] Corbin states the proper rule as follows: ". . . a bargain that is illegal and void by reason of a statute existing at the time of making is not validated and made enforceable by the subsequent repeal of the statute. Such a rule as this is actually applied, and properly so, if the statute prohibited the making of such a bargain for reasons of public policy as conceived by the legislature." (6 Corbin, Contracts (1951) p. 1043.) Other outstanding authorities agree (6 Williston, Contracts (rev. ed. 1938) pp. 4992-4993; Grismore, Contracts (1947) p. 524; 2 Elliott, Contracts (1913) p. 39; 2 Parsons, Contracts (9th ed. 1904) p. 828; Rest., Contracts, § 609; 13 C.J. 261; Note 126 A.L.R. 685; Note 28 Ann.Cas. 1398).

As illustrative of this principle, in *Jaques* v. *Withy* [1788]

126 Eng.Rep. 40, one of the first cases announcing the rule, it was held that a lottery insurance contract, illegal when made, was not validated by a subsequent repeal of the statute. In *Hannay* v. *Eve,* 7 U.S. (3 Cranch) 242 [2 L.Ed. 427], Mr. Chief Justice Marshall, speaking for the court, held that a contract, violative of war regulations when made, could not form the basis of an action brought after the repeal of those regulations. In *Toll* v. *Friedman,* 272 App.Div. 587 [74 N.Y.S. 2d 176], and *Government of the French Republic* v. *Cabot,* 190 Misc. 517 [76 N.Y.S.2d 290], this rule was applied to contracts which violated OPA price regulations when entered into even though the regulations were repealed before the cases came to trial.

This general rule has been recognized in California. In *Willcox* v. *Edwards,* 162 Cal. 455 [123 P. 276, Ann.Cas. 1913C 1392], suit was brought to recover money paid under a contract involving the purchase of stock on margin. At the time the contract was made a constitutional provision prohibited such agreements. Before the action was initiated the Constitution had been amended to legalize such contracts. In denying the plaintiff recovery, Justice Shaw stated that "The established rule is that if a contract is void by the law in force at the time it is made, the subsequent repeal of the law will not validate such contract." (162 Cal. at p. 461.)

In *Schalow* v. *Schalow,* 163 Cal.App.2d 448 [329 P.2d 592], an action was brought on a contract to purchase a house for $24,000. At the time the contract was made a provision of the Military and Veterans Code set a maximum price ceiling of $15,000 on purchases such as this. Before the action was filed the statutory maximum had been raised to $30,000. In reliance on the *Willcox* case the District Court of Appeal held that a contract, executed prior to the amendment, to pay an amount in excess of $15,000 was contrary to public policy and void.

While there is no unanimity of opinion as to the reasons for this rule, the authorities are in accord with its result. The reasons given by the courts differ depending upon the particular view taken as to whether an illegal contract is void or is simply unenforceable. If an illegal contract is regarded as being void, then there is nothing to enforce after the invalidating statute is repealed. (See *Handy* v. *St. Paul Globe Publishing Co.,* 41 Minn. 188 [42 N.W. 872, 4 L.R.A. 466, 16 Am.St.Rep. 695]; 2 Chitty, Contracts (11th Am.ed. 1874)

p. 982; 2 Parsons, Contracts (9th ed. 1904) p. 828.) Other authorities hold that an illegal contract is not void, but is simply unenforceable. Starting with the proposition that "no polluted hand shall touch the pure fountains of justice" (*Collins* v. *Blantern* [1767] 95 Eng.Rep. 850, 852), they reason that the repeal of a statute does not cleanse the stain from those hands. (*Fitzsimons* v. *Eagle Brewing Co.*, 107 F.2d 712 [126 A.L.R. 681]; Grismore, Contracts (1947) p. 524.)

Whether it be the rule in this state that an unlawful contract is void (cf. *Schalow* v. *Schalow, supra*, 163 Cal.App. 2d 448, 452) or only unenforceable (cf. *Fewel & Dawes, Inc.* v. *Pratt*, 17 Cal.2d 85, 90 [109 P.2d 650]) the law here is, and should be, that a contract, or provision in a contract, which contravenes public policy when made is not validated by a later statutory change in that public policy.

The case of *Fenton* v. *Markwell & Co.*, 11 Cal.App.2d Supp. 755 [52 P.2d 297], and other cases cited to the same effect, are not contrary to the rule discussed above. Those cases involved the repeal of usury statutes. Cases relating to usury are generally recognized as an exception to the rule that a contract illegal when entered into is not validated by a subsequent repeal of a law. (11 Cal.App.2d Supp. at p. 764; *Willcox* v. *Edwards, supra*, 162 Cal. 455, 461-463.)

But, Ohio argues, even if it be conceded that the exclusionary provision of its policy was not validated by the 1957 amendment and that that provision must be disregarded, then the policy is silent as to liability for permittees, and, after the 1957 amendment such users would not be covered by its policy. The argument is unsound. When Helms and Ohio entered into this policy the provisions of Vehicle Code section 415 were written into every policy of automobile liability insurance as a matter of law (*Wildman* v. *Government Employees' Ins. Co., supra*, 48 Cal.2d 31; *Osborne* v. *Security Ins. Co.*, 155 Cal.App.2d 201, 210-211 [318 P.2d 94]). It is well settled that insurance policies are governed by the statutory and decisional law in force at the time the policy is issued. "Such provisions are read into each policy issued thereunder, and become a part of the contract with full binding effect upon each party." (13 Appleman, Insurance (1943) 8; 1 Joyce, Insurance (2d ed. 1917) 522-523; see also *Wing* v. *Forest Lawn Cemetery Assn.*, 15 Cal.2d 472, 476 [101 P.2d 1099, 130 A.L.R. 120]; *Kilfoy* v. *Fritz*, 125 Cal.App.2d 291, 294 [270 P.2d 579]; *Flagg* v. *Sloane*, 135 Cal.App. 334, 336

[26 P.2d 874] ; *Connell* v. *Clark*, 88 Cal.App.2d 941, 950 [200 P.2d 26] ; *Ford* v. *City of Caldwell*, 79 Idaho 499 [321 P.2d 589, 593] ; *Neel* v. *Williams*, 158 Pa.Super. 478 [45 A.2d 375, 377].) ▮ Based upon the theory that "a statute should be given the least retroactive effect that its language reasonably permits" (*Corning Hospital Dist.* v. *Superior Court*, 57 Cal.2d 488, 494 [20 Cal.Rptr. 621, 370 P.2d 325]), this rule is followed even though there has been a subsequent amendment or repeal of the statute incorporated into the policy. (*Hanover Fire Ins. Co.* v. *Dallavo*, 274 F. 258, 265-266; 44 C.J.S., Insurance, § 302; accord, *General American Cas. Co.* v. *Austin*, 125 F.Supp. 721, 725; *Pawlik* v. *Nichols*, 195 F.Supp. 735, 741-742; *Styles* v. *Byrne*, 89 Mont. 243 [296 P. 577] ; *Wilkins* v. *Metropolitan Life Ins. Co.*, 350 Mo. 185 [165 S.W.2d 858, 861] ; *Western New York Medical Plan, Inc.* v. *Wikler*, 9 App.Div.2d 988 [189 N.Y.S.2d 61, 62.)

▮ It is no doubt true, as Ohio contends, that in 1957 the Legislature could, constitutionally, have removed from all policies in force at the effective date of the statute this mandatory coverage (see *Mercury Herald Co.* v. *Moore*, 22 Cal.2d 269, 282 [138 P.2d 673, 147 A.L.R. 1111] (concurring opinion) ; *Louisiana* ex rel. *Folsom Brothers* v. *Mayor of New Orleans*, 109 U.S. 285 [3 S.Ct. 211, 27 L.Ed. 936] ; *In re Sadler's Estate*, 73 S.D. 56 [38 N.W.2d 879]). But there is nothing to indicate that the Legislature wished the 1957 amendment to section 415 to have such a retroactive effect.

▮ It is, of course, a settled rule of construction that statutes are not to be given retroactive effect "unless the Legislature has expressly so declared." (*DiGenova* v. *State Board of Education*, 57 Cal.2d 167, 174 [18 Cal.Rptr. 369, 367 P.2d 865] ; *Corning Hospital Dist.* v. *Superior Court, supra*, 57 Cal.2d 488, 494; *Willcox* v. *Edwards, supra*, 162 Cal. 455, 460.) Moreover, it has been held on several occasions that the 1957 amendment to section 415 *would not* be retroactively applied to accidents occurring before its effective date (*American Automobile Ins. Co.* v. *Republic Indem. Co., supra*, 52 Cal. 2d 507; *Globe Indem. Co.* v. *Universal Underwriters Ins. Co., supra*, 201 Cal.App.2d 9; *Royal Exchange Assur.* v. *Universal Underwriters Ins. Co., supra*, 188 Cal.App.2d 662).

▮ Accordingly, it must be held that the 1957 amendment to section 415 does not apply retrospectively to policies in force before the effective date of that legislation.

So far it has been assumed that the 1957 amendment in-

tended to and did change the rule of public policy announced in the *Wildman* case. We have held that, even on this assumption, such change did not affect the coverage of the policy here involved. But the fact is that such assumption is not sound. The rule of public policy announced in *Wildman* was not repealed or changed by the 1957 amendment. The trial court's holding to the contrary was incorrect.

In the *Wildman* case it was held that sections 402[1] and 415 of the Vehicle Code, as they then read, "set forth the public policy of this state [and that] such laws must be considered a part of every policy of liability insurance even though the policy itself does not specifically make such laws a part thereof." (48 Cal.2d at p. 40.) This was done to effectuate the public policy of the state by making "owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles." (48 Cal.2d at p. 39.) Any provision in a policy which purported to exclude certain classes of permissive users from coverage was declared to be contrary to this public policy and, therefore, void. (See other cases so holding, *Exchange Cas. & Surety Co.* v. *Scott, supra,* 56 Cal.2d 613 (garage exclusion); *American Automobile Ins. Co.* v. *Republic Indem. Co., supra,* 52 Cal.2d 507 (customer exclusion); *Bonfils* v. *Pacific Automobile Ins. Co.,* 165 Cal. App.2d 152 [331 P.2d 766] (excluding others than named insured); *Cassin* v. *Financial Indem. Co.,* 160 Cal.App.2d 631 [325 P.2d 228] (drivers over 60 years old); *Royal Exchange Assur.* v. *Universal Underwriters Ins. Co., supra,* 188 Cal.App.2d 662 (garage exclusion); and *Wheeling* v. *Financial Indem. Co.,* 201 Cal.App.2d 36 [19 Cal.Rptr. 879] (military personnel exclusion).)

It is true that in 1957 the Legislature amended Vehicle Code section 415, one of the two statutes relied upon by this court in the *Wildman* decision.[2] On January 21, 1957 (four

---

[1]Section 402 has not been amended, except to change the number of the section, since the decision in *Wildman.*

[2]At the time of the *Wildman* decision section 415 (Stats. 1943, ch. 911, p. 2767) read in part:

"(a) A 'motor vehicle liability policy,' as used in this code means a policy of liability insurance issued by an insurance carrier authorized to transact such business in this State to or for the benefit of the person named therein as assured, which policy shall meet the following requirements: . . .

"(2) Such policy shall insure the person named therein and any other person using or responsible for the use of said motor vehicle or motor vehicles with the express or implied permission of said assured.' "

weeks *before Wildman* was filed), Senate Bill No. 952 was introduced as an act to amend section 415. The bill brought into section 415 the distinction between an "operator's" and an "owner's" policy of liability insurance. The proposed act, in subdivision "a," stated that "A 'motor vehicle liability policy,' as used in this code means an owner's policy or an operator's policy of liability insurance, certified as provided in Section 414 as proof of ability to respond in damages. . . ." Other subdivisions contained necessary provisions for each of these two types of policies.[3]

On April 4, 1957 (six weeks *after Wildman*) Senate Bill No. 952 was amended by substituting the word "chapter" for the word "code" in the sentence just quoted.[4] The need for this change of wording is clear and follows from the wording of the original bill. It would only be under "this chapter" that a policy would be "certified as provided in Section 414."

On April 24, 1957, a provision was added to the bill which would amend Vehicle Code section 417, relating to the termination of the proof of financial responsibility requirement. And on June 5, 1957, the bill was again amended, this time to increase the monetary limits of an owner's or operator's liability policy.

It is argued that the amendment of April 4, 1957, being after the *Wildman* decision, was a legislative attempt to overrule that case.

The difficulty with this contention is that it assumes the

---

[3] On January 21, 1957, the proposed amendment to section 415 read in part:

"(a) A 'motor vehicle liability policy,' as used in this code means an owner's policy or an operator's policy of liability insurance, certified as provided in Section 414 as proof of ability to respond in damages . . .

"(b) Such owner's policy of liability insurance: . . .

"(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of said assured. . . ."

[4] As finally enacted in 1957 this version of section 415 (Stats. 1957, ch. 1654, p. 3034) read in part:

"(a) A 'motor vehicle liability policy,' as used in this chapter means an owner's policy or an operator's policy, or both, of liability insurance, certified as provided in Section 414 as proof of ability to respond in damages, issued by an insurance carrier authorized to transact such business in this State to or for the benefit of the person named therein as assured.

"(b) Such owner's policy of liability insurance: . . .

"(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of said assured. . . ."

Legislature intended to change the fundamental public policy of this state as announced in *Wildman* by simply changing the word "code" to "chapter" in section 415. Whereas *Wildman* stated it was the public policy of the state that the liability policies of about 7,000,000 drivers (approximately 87 per cent of the total) covered permissive users, Ohio would have us believe that by making this semantic change in 1957 the Legislature wished to restrict that policy's application to the small (less than 1 per cent of the total) number of liability policies which are certified annually to the Department of Motor Vehicles. This seems a strange way to accomplish such a drastic change. The Legislature is usually quite capable of indicating clearly its desire to change or modify a rule announced in a decision of this court. (Compare, *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], with Stats. 1961, ch. 1404, § 1, p. 3209; *De Luz Homes, Inc.* v. *County of San Diego*, 45 Cal.2d 546 [290 P.2d 544], with Stats. 1957, ch. 2111, § 1, p. 3741; *Hunt* v. *Authier*, 28 Cal.2d 288 [169 P.2d 913, 171 A.L.R. 1379], and *Moffat* v. *Smith*, 33 Cal.2d 905 [206 P.2d 353], with Stats. 1949, ch. 1380, § 5.5, p. 2402; *Estate of Thornton*, 1 Cal.2d 1 [33 P.2d 1, 92 A.L.R. 1343], with Stats. 1935, ch. 831, § 1, p. 2248.) It is difficult to believe that the Legislature intended to change the far reaching effect of *Wildman* in such an oblique, confusing and ambiguous fashion. Without the most cogent and convincing evidence, a court will never attribute to the Legislature the intent to disregard or overturn a sound rule of public policy. (*Bayonne Textile Corp.* v. *American Fed. of S. Workers*, 116 N.J.Esq. 146 [172 A. 551, 557-558, 92 A.L.R. 1450]; *Jersey City Gaslight Co.* v. *Consumers Gas Co.*, 40 N.J. Eq. 427, 430-431 [2 A. 922]; *Opinion of the Justices*, 7 Mass. 523, 524-525; *Commonwealth* v. *Peterson*, 13 Pa. D. & C. 673, 676.) "Indeed, there is a presumption that the legislature does not intend to enact any legislation in contravention of existing public policy." (Crawford, Statutory Construction, p. 372, fn. 19.) Suffice it to say that the ambiguity created by the 1957 amendment to section 415 is not the "cogent and convincing" evidence needed to overcome this presumption.[5]

---

[5] It is also of some interest that the Legislative Counsel's analysis of Senate Bill No. 952, which became the 1957 version of section 415, does not even mention the possibility that *Wildman's* salutary rule would be endangered by passage of that bill. (Office of the Legislative Counsel, Report on S.B. No. 952, June 18, 1957.)

Furthermore, if coverage of permissive users turned upon the appearance of either the word "code" or the word "chapter" in section 415, then there would be a most perplexing situation. Because the section was several times amended there would be coverage if the contract was entered into before September 11, 1957 (Stats. 1943, ch. 911, p. 2767), no coverage if issued between September 11, 1957, and July 1, 1959 (Stats. 1957, ch. 1654, p. 3034), coverage for policies entered into between July 1, 1959, and September 18, 1959 (Stats. 1957, ch. 1653, p. 3030), and then possibly no coverage for policies effective after September 18, 1959 (Stats. 1959, ch. 3, §§ 16450, 16451, p. 1649). The intent to create such an illogical and confusing scheme cannot be attributed to the Legislature. ██ In fact, it is a duty of the courts to construe statutes so as to avoid such an absurd result, if possible. (*Knowles* v. *Yeates*, 31 Cal. 82, 87; *City of El Monte* v. *City of Industry*, 188 Cal.App.2d 774, 782 [10 Cal. Rptr. 802]; *California Emp. etc. Com.* v. *Municipal Ct.*, 62 Cal.App.2d 781, 785 [145 P.2d 361]; *Jordt* v. *State Board of Education*, 35 Cal.App.2d 591, 594 [96 P.2d 809]; *People* v. *Camp*, 42 Cal.App. 411, 420 [183 P. 845].)

██ In *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914], it was stated that the *entire* automobile financial responsibility law must be liberally construed to foster its main objective of giving "monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others." To hold that the 1957 legislation abrogated the rule of *Wildman*, would violate this rule of liberal construction and would be contrary to the trend indicated in recent legislative and judicial determinations involving the Vehicle Code. That trend is obvious. Thus in the past few years the minimum monetary limits of the financial responsibility law have been greatly increased (Stats. 1957, ch. 1654, p. 3034); every liability policy issued must cover the assured for injuries or damage caused by the negligence of drivers of uninsured motor vehicles (Ins. Code, § 11580.2; Assembly Subcommittee Rep. on Traffic Accident Consequences of April, 1959 (3 App. to Journal of Assembly)); in the interest of safety the suspension of licenses of those convicted of drunk driving by administrative determination has been permitted (*Hough* v. *McCarthy*, 54 Cal.2d 273 [5 Cal.

Rptr. 668, 353 P.2d 276] ; *Sauer* v. *McCarthy*, 54 Cal.2d 295 [5 Cal.Rptr. 682, 353 P.2d 290] ) ; the permissive user statute has been liberally construed (*Peterson* v. *Grieger, Inc.*, 57 Cal.2d 43 [17 Cal.Rptr. 828, 367 P.2d 420] ; *Jurd* v. *Pacific Indem. Co.*, 57 Cal.2d 699 [21 Cal.Rptr. 793, 371 P.2d 569] ) ; and liability extended over other provisions of the Vehicle Code dealing with liability insurance (see *Dana* v. *Sutton Motor Sales,* 56 Cal.2d 284 [14 Cal.Rptr. 649, 363 P.2d 881] ). The pattern is clearly discernible: a desire on the part of the judiciary and the Legislature to not only prevent the astronomical accident toll in this state, but to also provide compensation for those injured through no fault of their own. The interpretation suggested by Ohio would contravene this policy.

We hold that the rule of public policy as announced in *Wildman* v. *Government Employees' Ins. Co., supra,* 48 Cal.2d 31, was not overruled or changed by the 1957 amendment to section 415 of the Vehicle Code.

It therefore follows that for either or both of the reasons set forth in this opinion the decision of the trial court was erroneous and should be reversed.

The judgment appealed from is reversed, and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

Gibson, C. J., Traynor, J., and White, J., concurred.

Schauer, J., concurred in the judgment.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Fourt in the opinion prepared by him for the District Court of Appeal in *Interinsurance Exchange* v. *Ohio Casualty Ins. Co.,* (Cal.App.) 17 Cal.Rptr. 259.

Respondent's petition for a rehearing was denied August 15, 1962. McComb, J., was of the opinion that the petition should be granted.